EUGENE MORSE, Appellee, v. INCORPORATED TOWN OF CASTANA, Appellant.

No. 41190.

1226

FEBRUARY 16, 1932.

Underhill & Miller, for appellant.

Prichard & Prichard, for appellee.

ALBERT, J.—Defendant town is a municipal corporation organized under the laws of this state with a population of about 400. One of the streets of said town involved in this controversy runs north and south, and over a mile and one-half south from the inhabited portion of said town, but within the corporate limits, this street turns to the east. At a point about 300 feet north of the point where this street turns to the east is the scene of this accident. The width of the street is 50 feet. On the east of the street and running in the same general direction is a creek, and at the point where the accident occurred for a distance of about 75 feet (north and south) this creek impinges on said street.

On the 9th day of April, 1930, one Harold Reese, an employe of the White Eagle Oil Company of Onawa, Iowa, was driving an automobile on a mission of delivering some oil to one Benson who lived on a farm near Castana. One Kent was riding in the front seat with the driver of the car, and the plaintiff, Eugene Morse, was riding in the rear seat. They

passed south over this street, turned to the east, and went some distance and delivered the oil to Benson. They then returned on the highway, turning north at the corner, and had gone about 300 feet when this accident occurred.

This street was constructed with a slight grade in the center and shallow ditches on either side thereof. After the grade was completed, it was neither paved nor graveled, but was 24 feet wide on top, and the evidence shows was kept in good condition by dragging.

It appears from the evidence that where the creek impinges on the highway, as above stated, the action of the water had cut a V-shaped excavation in the street some 16 to 20 feet in depth, the point of the V being to the west. There is some dispute in the testimony as to how close the point of this excavation came to the graded portion of the street, several witnesses, who gave their opinion from observation, testifying that it was "very close," one witness testifying it was within one foot from the graded portion of the street; while the engineer and persons who made actual measurements thereof stated it was from four to six feet.

Plaintiff's evidence shows that while they were going north approaching this point, the car was moving at the rate of 20 miles an hour, and was traveling in the center of the graded portion of the highway, when for some unknown and unexplained reason, the car veered sharply to the right and passed off of the grade into the slight ditch at the side of the road and thence into the excavation caused by the water in the creek to which reference is made above. The car turned over when it went into the excavation and plaintiff suffered serious injury.

Among other instructions given by the court was No. 6, reading in part as follows:

"You are instructed that public travel is not supposed to occupy all the country highway leading out of a village, although within its limits; and the authorities are not required to put the full road in condition as if the public required the use of the whole road; but it is required to use reasonable care and caution to keep in condition and repair the portion of the road so dedicated to the public use by the city. It is the duty of the city to use reasonable care and caution to have such road in a reasonably safe condition for persons traveling there-

on in the usual and ordinary modes of travel, but this reasonable care is not limited to the traveled road, but extends to the full limit of the street upon a public highway; and the city should use reasonable care and caution to discover any dangerous excavations or cliffs adjacent to the traveled portion of said road which might be dangerous to the use of said public road in the usual and ordinary manner, and reasonable care and caution might require that the city erect a fence or barrier between such excavation, hole or dangerous cliff over which a traveler using such road in a careful and prudent manner is liable to fall."

Two complaints are made against this instruction, the first being that it incorrectly states the law, and second, that it is inconsistent.

It will be noticed that in the first part of the instruction the jury was told that the authorities are not required to put the full street in condition as if the public required the use of the whole street, but it is required to use reasonable care and caution to keep in condition and repair the portion of the road so dedicated to the public use by the city. So far this part of the instruction, therefore, amounts to a direction to the jury that the city had a right to dedicate only a portion of the street to vehicular traffic, and it was only bound to use reasonable care and caution to keep that part in good condition and repair.

Further in the instruction the jury was told: "But this reasonable care is not limited to the traveled road, but extends to the full limit of the street upon a public highway." This portion of the instruction told the jury that the city was bound to exercise reasonable care not as to the traveled portion of the road, but to the full limit of the street, which is squarely in conflict with the former part of the same instruction. The jury would be unable to determine, under this instruction, whether the city was bound to keep up a passable highway from fence line to fence line, or only that portion which had been made into a passable road by the city or town. No one would be able to say which part of the instruction the jury followed.

Plaintiff states his position in these words: "The duty of the town to keep its streets free from holes or excavations of a dangerous character extends to the entire street and not merely to the narrow traveled part thereof."

With this broad statement we can not agree. If this were the rule it would have been the duty of this town to make this street passable for vehicles or traffic from fence line to fence line. While it is true that in some particular cases it has been said, in a loose way, that it is the duty of a municipality to maintain its streets free from obstructions or pitfalls to its full width, this statement is too general as construed by the appellant herein. We understand the rule to be that a municipal corporation has the right to divide its streets and set apart certain parts thereof for vehicular traffic, and when it does so, the part thus dedicated to that purpose is the part which falls within the provisions of the statute that it must use reasonable diligence to keep the same free from obstructions and pitfalls.

It is the usual custom of cities and towns with a street, say 80 feet in width, to provide for sidewalks on either side of the street and also to authorize certain portions of the street to be utilized for parking purposes. Many municipal corporations have a line of shade trees on either side of the street in the parking, and in many instances there are telephone and electric light poles situated on one and sometimes both sides of the street. No one questions the right of a city to authorize these constructions on either side, but on the street proper. Many towns and cities have pavement with curbing in the center of the street, which is the part designated to vehicular traffic, and the part thus dedicated is the part which for vehicular traffic, the municipality must, under the statute, keep in reasonable repair and free from obstructions or pitfalls. This is the conclusion which must be reached after a careful review of our cases as follows: Rusch v. City of Davenport, 6 Iowa (Clarke) 443; Stafford v. City of Oskaloosa, 57 Iowa 748, and 64 Iowa 251; Byerly v. City of Anamosa, 79 Iowa 204; Fulliam v. City of Muscatine, 70 Iowa 436; Lamb v. City of Cedar Rapids, 108 Iowa 629.

While in some of our cases it has been said it is the duty of a city to maintain a clear street to the full limit of the street, it will be found on a study of those cases that the city or town had in fact opened said street for vehicular traffic to its full width.

The latter part of instruction 6, in referring to the care and caution of the city, made it the duty of the city to discover

any excavation or cliff adjacent to the traveled portion of the street which might be dangerous to the use of said public road in the usual and ordinary manner, and reasonable care and caution might require the city to erect a fence or barrier between such excavation, hole or dangerous cliff. Objection is made to this portion of the instruction on the ground that no such issue was involved in the case.

Turning to plaintiff's petition we find that there is no allegation of negligence wherein it is charged that the city was negligent because it failed or neglected to erect a fence or barrier around this excavation. It is therefore apparent also that the instruction is bad in this respect. We have repeatedly announced the rule that it is error for a court to submit to the jury a question or charge of negligence which is not pleaded. Storrs v. Emerson, 72 Iowa 390; Miller v. C. M. & St. P. Ry. Co., 76 Iowa 318; Beard v. Guild, 107 Iowa 476; Tabler v. Evans, 202 Iowa 1386.

On the question that error is committed in the giving of inconsistent instructions see Preston v. Dubuque & Pac. Ry. Co., 11 Iowa 15; State v. Benham, 23 Iowa 154; Carlin v. C. R. I. & P. Ry. Co., 31 Iowa 370; Conway v. Illinois Central Ry. Co., 50 Iowa 465; Pumphrey v. Walker, 75 Iowa 408; Loomis v. Des Moines News Co., 110 Iowa 515; Beaver v. Porter, 129 Iowa 41; Mt. Hamill State Savings Bank v. Hughes, 196 Iowa 861.

To the point that the giving of such confusing and conflicting instructions is reversible error, see Chadima v. Kovar, 168 Iowa 385; In re Estate of Workman, 174 Iowa 222.

Appellant further insists that the plaintiff was guilty of contributory negligence as a matter of law. In view of the reversal of this case, we do not care to pass upon this question, as on a re-trial, the evidence may be somewhat different than in the present case.

Some other questions are discussed, but we give no further attention to the same because of the prejudicial errors contained in instruction No. 6 above set out.—Reversed.

WAGNER, C. J., and STEVENS, DE GRAFF, and FAVILLE, JJ., concur.