SOCONY MOBIL OIL COMPANY, Inc., et al.,
Appellants,

v.

C. A. SLATER and P. D. Withrow d/b/a Two
States Tank Company et al., Appellees.

No. 5774.

Court of Civil Appeals of Texas.

El Paso.

Feb. 15, 1967.

Rehearings Denied March 15, 1967.

Turpin, Kerr, Smith & Dyer, Jack T. Akin, Midland, Hardie, Grambling, Sims & Galatzan El Paso, for appellants.

Shafer, Gilliland, Davis, Bunton & Mc-Collum, Odessa, Evans, Pharr, Trout & Jones, Charles B. Jones, John A. Flygare and L. Brann, Lubbock, for appellees.

## OPINION

PRESLAR, Justice.

This is a suit for property damage resulting from an oil field fire. Appellees, B. J. Well Service, Inc., hereinafter called "BJ", and Two States Tank Company, hereinafter called "Two States", brought separate actions, in the same suit, against appellant, Socony Mobil Oil Company, Inc., hereinafter called "Mobil", and J. B. Bonner, dba Bonner Lease Service, hereinafter called "Bonner", for fire damage to their respective equipment which occurred while Mobil's well was being treated by acidizing. Trial was to a jury, and based upon their verdict, judgment was rendered against Mobil and Bonner, jointly and severally, in favor of BJ for $163,289.63 and in favor of Two States for $4,500.00. Both Mobil and Bonner appeal.

A somewhat extended statement of the facts is necessary. To treat its well, Mobil contracted with BJ to do the acidizing and fracing; it contracted with Bonner to provide the heating of the oils to be used in the operation; tanks necessary to the operation were rented from Two States by Mobil; and the rig and crew of Bateman & Whitsett was engaged to run tubing, but they are not parties to the suit. Two types of oil were used—crude, or lease oil, furnished by Mobil, and frac, a refined oil, furnished by BJ. Fire resulted when a Bonner employee mixed hot frac oil with a tank of hot crude oil. Equipment of BJ and the tanks of Two States were damaged in the amount of the judgment, the extent of the loss being stipulated. Treatment of the Mobil well involved acidizing the formation and flushing it with the hot crude oil after acidizing, and the pumping of the hot frac oil, mixed with sand, into the oil-bearing stratum under great pressure. Those were BJ's part of the operation, although the fire occurred before they got to the fracing operation. Two States had no active part in the treating process; it merely supplied the two tanks, each of approximate 500-barrel capacity, which were later filled to near capacity—one with crude oil and the other with frac oil. Bonner's job was to heat the oil in each tank to 160° F. This was done by circulating the oil through a heating unit supplied by Bonner.

On the day of the fire, Bonner's operator of the heating unit, one Bowles, heated the tank of crude oil, but before heating the frac oil, he withdrew some fifteen barrels into an auxiliary tank on his heating unit because he thought the tank was so full of frac oil that it would probably expand and overflow when heated. The BJ crew acidized the well and flushed it with some of the crude oil, and then stood by doing nothing while the Bateman & Whitsett crew pulled the tubing. Bonner's operator, Bowles, heated the tank of frac oil and again heated the tank of crude oil to bring it up to 160° F. "Chick" Smith, the Mobil engineer who had designed the criteria for completing this well, came to the site, and Bowles asked Smith if it would be all right if he pumped the excess frac oil from his auxiliary tank into the crude oil storage tank. Smith replied that it would be O.K. and to go ahead. Smith then left for lunch in town, and soon thereafter Bowles began to heat the frac oil in his auxiliary tank and to pump it into the tank of crude oil. Soon after Bowles began to mix the hot frac oil with the hot crude oil, there was a sudden eruption or spewing of the crude oil out of the opening in the top of the tank to a height variously estimated at from five to twenty feet above the top of the tank. The vapor from the crude oil "flash" ignited almost immediately and the oil in the two tanks started to burn, resulting in the damage to the tanks of Two States and the equipment of BJ.

The court sustained the motions of Two States and BJ for instructed verdict as to the claims of each against the other, and overruled the motions for instructed verdict of Mobil and Bonner. Issues were submitted to the jury pertaining to the respective claims of Two States and BJ against Bonner and Mobil, and the respective claims of Two States and Mobil against BJ. The amount of damages being stipulated, judgment was rendered for BJ and Two States based on findings of specific acts of negligence on the part of Bonner and Mobil. No negligence was found on the part of BJ, and it was found that the fire was not the result of an unavoidable accident. It was found that Mobil was negligent in ordering the crude oil to be heated and that same was a proximate cause of the fire; that Mobil permitted and allowed the heated frac oil to be placed in the same tank with the heated crude oil, and that such was negligence and a proximate cause of the fire; and that Bowles (Bonner's operator) was attempting to put heated, refined frac oil into the same tank with heated crude oil, and that such mixing of heated frac oil in the same tank with heated crude oil was negligence and a proximate cause of the fire. Thus, the judgment rests on two findings of negligence against Mobil—heating of the crude oil, and permitting the mixing of the two hot oils; and it rests on one finding of negligence against Bonner—the mixing of the two oils.

The assignments of error are too numerous to set out here, for each appellant has brought forward as a point of error on appeal each and every point of each and every defensive pleading presented at each stage of the trial—e. g., Summary Judgment Motion for Directed Judgment, Motion for Judgment NOV, Motion for Mistrial, etc. This careful preservation of all rights to assert all possible points of error has resulted in much duplication, overlapping, and various shades of assignments both within the respective briefs of each appellant and as between the two of them. We have considered and passed on each assignment in the manner presented, but will discuss and present our conclusions with more brevity, and yet try to meet our obligation to state the basis of our rulings.

To Special Issue No. 13 the jury found that J. W. Bowles (Bonner's heating operator) on the occasion in question was attempting to put heated refined frac oil into the same tank with heated crude oil; and (Issue No. 14) that such mixing of heated frac oil in the same tank with heated crude oil was negligence; and (Issue 15), such negligence was a proximate cause of the fire. Appellant Bonner urges that there is no evidence to support Issues 14 and 15. When the contention that there is no evidence is made in a situation like this, the reviewing court may consider only that evidence, if any, which, viewed in its most favorable light, supports the jury findings, and we must disregard all evidence which would lead to a contrary result. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957). The question is one of the existence of the evidence—whether in the record before us there exists any evidence of probative value which, with the reasonable inferences therefrom, will support the findings of negligence and proximate cause. If reasonable minds cannot differ from the conclusion that the evidence lacks probative force, it will be held legally equivalent to "no" evidence. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898); Woods v. Townsend, 144 Tex. 594, 192 S.W.2d 884. The jury had before it definitions of "ordinary care", "negligence", and "proximate cause" and, having viewed the evidence under the above rules, we have concluded that there is some evidence to support the findings. Under these definitions, the tests of Bonner's negligence, vel non, is what Bowles, in the exercise of ordinary care, should have reasonably anticipated would happen in the light of common knowledge, as a result of his mixing the hot oils in the manner in which it was done—"that the injury complained of, or a similar one, would

result naturally and probably, in the light of the attending circumstances." It is not disputed that Bowles was attempting to mix the hot frac oil into the tank of hot crude oil, and there is testimony of an expert witness that such mixing was a probable cause of the fire. There is much testimony as to the dangerous propensities of the product with which he was working and its behavior when heated to what may be called abnormal temperatures. The jury could charge Bowles with knowledge of these things, for he had been around the oil fields for many years and had been in the oil heating business for the past ten years. He knew that oil gave off gas when heated, crude oil more so than frac, and he checked the wind direction and placed his unit so no fumes from tanks would blow around it. He was heating the oil until it reached a sustained temperature of 160° in the tanks. He had seen oil bubble over from tanks at a lesser temperature. He was circulating the oil in his heater at 200°, and the evidence is that the frac oil was probably boiling as it came out of the heating unit. It was entering the tank of crude oil boiling, or just about boiling, under 55 or 60 pounds pressure at the rate of one and a half or two barrels per minute. Bowles testified that he knew the oil would give off fumes when heated, that it always occurs with "lease" oil; that he knew it gave off vapors—methane, pentane and gasoline—which could be ignited by a spark; that he had never heated oil to 160° before and would not have done so on this occasion if he had not been told to do so. We have concluded that the jury's findings must be sustained.

◼ The point is also presented that findings 14 and 15 are against the great weight and preponderance of the evidence. When such contention is made, a court of civil appeals must examine all of the evidence and reverse and remand for a new trial if it concludes that the verdict or finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. All of the evidence is considered—that which supports the verdict as well as that which is against it. As to the findings before us, there is very little actual conflict in the evidence. That which supports the findings can be characterized as weak in some areas, but its weakness comes from itself, and not because it is controverted or outweighed by opposing evidence. On the matter of the fire being caused by the mixing of the heated oils, one expert witness testified:

"Q  Mr. Ducker, you were asked to look into this case on behalf of Mr. Jones for Two States Tank people, is that correct, sir?

A  Yes, sir.

Q  And your assignment, as I understand it, was to determine if you could the most probable explanation of the oil coming out of the bank, overflowing and going into the air, and producing this fire?

A  Yes, sir.

Q  Your most reasonable and probable explanation was the mixing of these two fuels, that is, the hot frac oil with the hot crude oil in this tank?

A  In this particular combination in which it occurred."

This witness and another expert both testified at great length, and the other expert had other ideas about the matter, but very little of their testimony was in actual conflict. His opinion as to cause could be characterized as "I don't know". The jury, as the sole judges of the credibility of the witnesses and the weight to be given their testimony, was free to resolve all conflicts and to believe or disbelieve these and the other witnesses. We are unable to say that their findings on these issues are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Appellant Mobil urges that there is no evidence to support the jury's findings to

issues similar to those above discussed. To Special Issues Nos. 5, 6 and 7, the jury found that Mobil permitted and allowed the heated frac oil to be placed in the same tank with the heated crude oil, that such permitting and allowing of the heated oil to be mixed was negligence, and that such negligence was a proximate cause of the fire. Under the court's instructions that there can be more than one proximate cause of an event, the jury answered Special Issues Nos. 9, 10 and 11 that Mobil ordered the crude oil heated, that in ordering the crude oil heated Mobil was negligent, and that such negligence was a proximate cause of the fire. Mobil contends there is no evidence to support these findings. Four Mobil employees who were connected with this operation in a supervisory capacity testified. In the portions of their testimony favorable to the findings is found some evidence which supports the jury's answers. It is too voluminous to repeat here, and is scattered and in a sense fragmentary, so that it would not make sense to repeat it without setting out the full text in which it appears. In a situation like this, appellate courts are torn between the duty to rule clearly and concisely, and yet explain how the conclusions were reached. Briefly, the really close question as to each of the above sets of issues is the element of foreseeability in connection with negligence and proximate cause. From these Mobil men there was evidence that fracing with hot oil was a relatively new process and that it was hazardous. That the higher the temperature, the greater the hazard; that it had not been done at this high a temperature before—160°; that sometimes Mobil warned of these hazards, but that it was not done in this instance; that Mobil did not mix crude and frac oil, and that was why separate tanks were employed; that heating crude oil was dangerous and that it was not to have been done on this job. Yet another employee testified that, on order from the Lubbock office, he ordered Bonner to heat the crude oil. The Mobil employee who told Bonner's employee, Bowles, that it was all right to mix the

frac and crude oil was a graduate petroleum engineer, experienced by seven years in this type of work; in fact he had designed the criteria for this job and was on the job to give technical advice. The other Mobil men were experienced, and working at this type of well completion was their regular job. An expert, Professor Ducker, head of the Petroleum Engineering Department of Texas Technological College, gave the jury much information as to what happens to crude oil when heated; that in his experiments to seek the cause of this fire he did not use the same oils that were used in this operation because it would have been too dangerous to him and his laboratory. Viewing the evidence under the rules above enumerated, we conclude that each of these findings of the jury is supported by some evidence.

■ Error is assigned in entry of the judgment based on the verdict because of certain conflicts in the findings. Before a judgment based on a verdict containing conflicting answers will be set aside, it must be shown that the conflict between the answers is such that one answer would establish a cause of action or defense, while the other would destroy it. Pearson v. Doherty, 143 Tex. 64, 183 S.W.2d 453; Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985. It was found by Issues Nos. 1 and 2 that Mobil ordered the "oil in the tanks in question heated to 160°", but that ordering the oil heated to that temperature was not negligence. The contention is made that this last finding is in conflict with Issues 10 and 11 that mobile ordered the "Crude Oil heated" and that Mobil was negligent in ordering the "Crude Oil heated". The conflict is resolved by the very nature of the questions in view of the evidence. There were two tanks, one containing frac oil and the other crude oil, and there is evidence of the different effect on each when heated. Thus, the jury could well believe that it was not negligence to heat frac oil, but that it was negligence to heat crude oil. In such event the questions would have to be an-

swered as they were. It is urged that Issue No. 5, to the effect that Mobil permitted and allowed the oil to be mixed, is in conflict with the answer to Issue No. 24, to the effect that at the time of the fire the tanks, the hot oil truck, and the oil heating operation were under the exclusive control of Bonner. We see no irreconcilable conflict here. Bonner could be in control and yet have permission of Mobil, in the exercise of that control, to mix the two oils. By its answer to Issue No. 25, the jury found that Bonner did not fail to use ordinary care "in performing the heating operation". It is contended that this is in conflict with Issue No. 14, "that such mixing of heated frac oil in the same tank with heated Crude Oil" was negligence. Bowles testified in considerable detail as to how he carried on the process of heating the oil. The jury could well find that he did not fail to use ordinary care in his heating operations, and not be in conflict with its belief that "such mixing" was negligence. He did not fail to heat well, but he never should have mixed the heated oils. Failure to use ordinary care in the heating operation was but another claimed act of negligence, and a negative answer to it does not destroy a positive answer as to the other claimed act. The same thing can be said for the finding on Issue No. 17 whereby the jury was asked: "Do you find from a preponderance of the evidence that J. W. Bowles caused the oil in the tank to become overheated and to boil out of the tank on the occasion in question?", and the answer was negative. Those claiming he did, failed to carry their burden by a preponderance of the evidence, but no conflict was created.

It is urged that the judgment should be reversed as to the recovery granted BJ against Bonner and Mobil because of the "no duty" doctrine of the owner-invitee situation, voluntary assumption of the risk doctrine (volenti non fit injuria), and the "transitory conditions" doctrine. It is our opinion that the facts and jury findings do not bring this case within any of those doc-

trines sufficiently to establish any of them as a defense.

■ In a common law negligence action of this type, the bare elements of recovery require that the injured party (plaintiff) prove that the other party (the defendant) owed a legal duty to the plaintiff which he violated, and that plaintiff suffered injury which was proximately caused by such violation. Plaintiff must be free of fault proximately causing his injury, for one cannot recover where he brings about his own injury nor where such injuries are caused by both himself and the defendant. In this case Bonner and Mobil were found to be at fault by certain negligent acts which caused injury to BJ, and BJ was found free of fault causing such injuries; yet the contention is made that BJ cannot recover because of the "no duty" and volenti doctrines. Those doctrines are most recently discussed by the Supreme Court of this State in the case of J. & W. Corporation v. Ball, 414 S.W.2d 143 (January 14, 1967), and the two doctrines were summarized at page 146:

> "This Court in McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954), clearly stated that there are two legal theories, wholly aside from the plaintiff's own contributory negligence, for denying liability in a suit against an owner or occupier of land brought by an invitee for injuries. This Court there said, 'One [of these two theories] rests on the judicial concept that there is no breach of any duty the landowner owes to his invitees. The other arises out of the doctrine of volenti non fit injuria — voluntary encountering of risk — which is regarded as a defense to all negligence actions. In this state both theories are recognized.' 271 S.W.2d at 393. These two legal theories were again explained in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963)."

■ This so-called "no duty" theory is part of the plaintiff's case, and as an in-

vitee he must plead and prove the existence of a duty on the part of the occupier and a breach of that duty. Plaintiff says there is a duty, and defendant says there is no duty. BJ did not elect to seek recovery under the "no duty" theory, but relied on actionable negligence. *Where* those acts were committed is not the basis of the judgment. The "no duty" theory can have no application to Bonner, for he was not the owner or occupier, and we fail to see how the fact that Mobil, as the owner of the land where the acts were committed, can be legally excused from such acts by the mere fact of ownership. But it is urged that BJ had knowledge of the dangers which it would encounter in doing this work and cannot recover because it assumed the risk. Assumed risk is the heart of the volenti doctrine, and is an element of the court-nurtured jungle of rules involved in "no duty". The assertion that BJ had knowledge of the dangers to be encountered is too broad. If their fault be that they assumed a risk, it should be a risk normal to the activity in which they were engaged—an expected danger, or one easily predictable. Heating the crude oil was not a normal part of the operation; it had never been done before, and was not supposed to have been done this time. Mixing of the hot frac oil and hot crude oil was not a part of the process of treating the well. It, too, was not supposed to have been done. Applicable here is the rule announced in Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup., 1963), holding that in "no duty" cases involving activities, the activities generally must be rigidly circumscribed and easily predictable. The hazards encountered by BJ—the heating of the crude oil and the mixing of the two heated oils—do not meet that test. For similar reasons, the volenti doctrine is inapplicable here; that is, BJ could have been aware of the normal dangers, but not know of or appreciate the particular danger which caused its injuries. Such is the holding of the Supreme Court in Triangle Motors of Dallas v. Richmond, 152 Tex.

354, 258 S.W.2d 60 (1953), and Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951). In each of those cases the plaintiff was aware of some danger, but did not know or appreciate the particular danger. One cannot intelligently choose to encounter a risk of which he does not know. There is no evidence that BJ had any knowledge that the two oils were to be mixed. BJ assumed the ordinary risks of the operation, but did not assume the unusual risk of the negligence of mixing the oils. As this court said, in Fabens Ice Company v. Kosinski, Tex.Civ.App., 339 S.W.2d 543, at page 548:

"A person must assume all the ordinary risks of his voluntary acts or the environments in which he voluntarily places himself, but he does not assume obscure and unknown risks, which are not naturally incident thereto and which, in the existing conditions, would not be reasonably observed and appreciated, and one is not required to anticipate that he will be exposed to a hazard not naturally incidental to his situation, but arising from negligence which he had no reason to foresee. 65 C.J.S. Negligence § 174, p. 852 (and cases cited)."

Volenti being a defense, it was incumbent upon Mobil and Bonner to submit proper issues to establish it. Issues were proposed to the court and they were rejected. We think the trial court was correct in refusing the two proposed issues (regarding volenti), for they did not meet the requirements of Rule 279, Texas Rules of Civil Procedure, and for the further reason that their submission and favorable answers thereto would not have established knowledge and appreciation of the particular dangers above discussed. They inquired whether at the time of entering into the contract with Mobil, BJ knew and fully appreciated "the dangers and hazards" involved in fracing the well with heated oil, and whether BJ voluntarily assumed such risks. There is no evidence, certainly not at the time of entering into the contract, that BJ knew the two oils were to be mixed

—no evidence to require the submission of such an issue. The requested issues were too broad and general to cover the particular acts which it is claimed that BJ assumed.

 Point of error is made that the judgment for $4,500.00 rendered against Bonner and Mobil in favor of Two States cannot stand as to Bonner because of the imputed negligence rule of the bailee-bailor relationship of Two States and Mobil. The rule is precisely set out in Weir v. Petty, Tex.Civ.App., 355 S.W.2d 192 by quoting from Rose v. Baker et al., 138 Tex. 554, 160 S.W.2d 515 (1942):

" ' * * * where a bailor entrusts his property into the care, custody, and control of a bailee, and damage results to such property while in the hands of the bailee, as a result of negligence on the part of a third party and contributory negligence on the part of the bailee, the contributory negligence of the bailee is imputed to the bailor, so as to bar recovery by bailor in his suit against the negligent third party' ".

Two States leased the tanks in question to Mobil, delivered them to the well site, and had nothing more to do with them. They were destroyed by the fire, and Two States, in seeking recovery for their loss, alleged that both Mobil and Bonner were negligent; the jury so found, and the $4,500.00 judgment resulted. The judgment cannot stand if the above quotation is the law, and we are convinced that it is. It is not the law in a vast majority of other jurisdictions, but it is the law in Texas by a long, unbroken line of cases going back to the year 1885. We are constrained to follow it, and therefore we reverse and render that portion of the judgment in this case which grants Two States judgment in the amount of $4,500.00 against appellant, Bonner, and here render judgment that Two States take nothing as against Bonner.

All points of error have been considered and all are overruled except in the instance above noted as to that portion of the judgment of Two States against Bonner; and excepting such portion of the judgment, the remainder of the judgment of the trial court is in all things affirmed.