Bernard CONRAD and Leona Conrad,
Appellees,

v.

BOARD OF SUPERVISORS OF LEE
COUNTY, Iowa, and Lee Coun-
ty, Iowa, Appellants.

No. 55030.

Supreme Court of Iowa.

June 29, 1972.

Fehseke & Fehseke, Fort Madison, for appellants.

Napier, Napier & Wright, Fort Madison, for appellees.

UHLENHOPP, Justice.

This appeal in a negligence action for pollution of a farm pond turns mainly on whether the plaintiffs proved damages.

Bernard and Leona Conrad own farm land beside one county road and a short distance from another county road in Lee County, Iowa. The two roads drain naturally onto the Conrads' land in an area where some springs rise. A number of years ago the Conrads had a small pond in that area, but the dam washed out.

For about ten years Lee County has placed liquid lignin sulphite (called "tree

sap") on its crushed rock roads in order to reduce loss of rock and keep down dust. Tree sap, a waste product of the paper industry, holds the rock together. The county gets its supply of tree sap free from a Fort Madison paper mill, which is not permitted to dump the liquid into the Mississippi River. Tree sap does not appear to be toxic but has an odor, is dark brown in color, and in concentration affects the palatability of water.

Viewing the evidence in the light most favorable to the verdict, the facts appear to be that in 1968 the Conrads contemplated letting their son place a herd of cattle on their land, and this necessitated an enlarged water supply. The Conrads decided to build a pond of about an acre in size where the smaller pond had been. In June of 1968 Mr. Conrad reported this plan to the county engineer and asked him to cease placing tree sap on the roads in that vicinity. A short time later Mr. Conrad also told a member of the board of supervisors and the county auditor about the pond which was to be built, saying he did not want tree sap in it.

In September 1968 the pond was built for the Conrads by two boys. Mr. Conrad was unable to get the boys to remove silt satisfactorily from the bottom of the excavation, so he and his son worked on the area with a long chain and a railroad iron. Another construction man, Ludwig Beach, refused to remove the silt because the job of building the pond was being done by the boys. By the end of September the dam was closed and the pond began to fill.

On October 31 and November 8, 1968, the county applied tree sap to the two county roads in question. Rains soon came and the water-soluble tree sap dissolved and drained into the pond, causing the pond water to become brown and to smell like creosote. At that time the cattle were on the land and they would not drink the polluted pond water. Water had to be hauled in, and another source of water supply had to be constructed.

Water drains through the pond from the springs and from rains, and outlets through a pipe in the dam. The evidence is entirely unsatisfactory as to whether or how long the tree sap remained in the pond. Soon after the pollution occurred, the local Extension Service took a sample of the pond water and sent it to a laboratory in Iowa City. The Conrads got a copy of the laboratory report, but were unable to produce it at trial. Mr. Conrad testified the report disclosed "7.5 tank acid." No showing was made as to what kind of scale "7.5" is, what "tank acid" is, or whether tank acid has any connection with tree sap. About four months after the pollution occurred, the county obtained a laboratory examination of four samples of the pond water. The parties stipulated that the four analyses respectively showed 0.012%, 0.014%, 0.014%, and 0.015% lignin sulphite in the water. Lignin sulphite is used as a binder for pellets in livestock feed, and regulations of the Federal Food and Drug Administration permit up to 4% of it in feed.

The Conrads brought the present action for damages against the county board of supervisors and the county. See ch. 613A, Code, 1971, which abolishes governmental immunity of counties with exceptions not involved here. The trial took place in December 1970. At that time Mr. Conrad did not know what the condition of the water was and nothing had been done about the pond. The jury returned a verdict of $4,210.41 for the Conrads. Hence this appeal by the board of supervisors and the county—whom we will refer to collectively as the county.

The county assigns a number of errors, which we will consider to the extent necessary to disposition of the appeal.

I. *Damages.* Several of the assigned errors relate in one way or another to the damage issue.

(a) The main battle at trial was over the steps actually necessary to remove the pollution from the pond and over the cost

of such steps. The Conrads claim that the pond must be drained, the mud removed, and the bottom packed with clay to prevent leakage. They further claim that the cost of such work will be $4,000. The county contends no substantial evidence was introduced that the mud must be removed or the bottom must be packed with clay, or, if those things must be done, that the reasonable cost of so doing will be $4,000. The county does not seriously contest the item of $210.41 of special damages in the jury's verdict of $4,210.41. That item was for obtaining an alternate water supply for the cattle. The problem, therefore, relates to the $4,000 claim.

The Conrads had to introduce substantial evidence of their damages. Their theory was that the pond could be restored to its previous condition; hence the pollution constituted temporary as distinguished from permanent injury. See Annots. 49 A.L.R.2d 253, 304–306; 19 A.L.R.2d 769, 778–780.

██ In order for the Conrads to develop the damage issue on restoration, they had to prove what is *necessary* to be done in order to restore the pond to its previous condition and the *reasonable cost* of doing what must be done. State v. Urbanek, 177 N.W.2d 14 (Iowa); Fischer v. Hawkeye Stages, 240 Iowa 1203, 37 N.W.2d 284; 25 C.J.S. Damages § 48 at 770–773. The difficulty is that the evidence contains no substantial proof of what is necessary or of reasonable cost. Since water drains on through an outlet pipe, did the pond clean itself out? The evidence does not show. If the pond did not clean itself out, will pumping out the pond rid it of pollution? The evidence is unrevealing. If pumping will not get rid of the pollution, will removing the mud and packing with clay be necessary? No substantial evidence was introduced so to show. Nor was substantial evidence adduced as to the reasonable cost of those various measures. The Conrads would like, of course, to have the pond completely emptied of water and mud

and packed with clay—and they may in fact plan to take that course. But the evidence lacks substantial proof of the necessity or of the reasonable cost of so doing.

██ The trial court stated, "I think it is very, very thin," but decided to let the jury resolve the issue on the $4,000 damage claim. We conclude that the evidence was not more than a scintilla, if that, and under our rule a scintilla is not enough. Ellingson v. Kramer, 255 Iowa 1257, 125 N.W.2d 777. The item of $4,000 should not have been submitted to the jury on the case as made.

(b) The county contends that the trial court admitted opinion testimony without proper foundation and also hearsay testimony, pertaining to the $4,000 damage claim. We need not consider these assigned errors. Even with such testimony in the case, no substantial evidence appears to support the $4,000 damage claim, and the same problems of admissibility may not occur on retrial. In connection with retrial, however, we call attention to the following decisions dealing with opinion testimony: Hedges v. Conder, 166 N.W.2d 844 (Iowa) (must show qualifications of witness giving opinion); State v. Cooper, 180 N.W.2d 424 (Iowa) (facts on which opinion is predicated must appear); Dougherty v. Boyken, 261 Iowa 602, 155 N.W.2d 488 (opinion must not be founded on hearsay).

██ (c) Another contention of the county regarding damages is that the claim for ridding the pond of pollution can in no event exceed the difference in the value of the land before and after the injury and that the trial court did not so instruct. The substantive rule is as the county contends. 56 Am.Jur. Waters § 422 at 841–842; 93 C.J.S. Waters § 56 at 718. But the county failed to take adequate exception. No instruction was requested by the county, and its exception to the damage instruction was only that "It submits to the jury an improper measure of damages, it allows the jury to speculate, and it allows

the jury to charge the Defendants with the reasonable cost of providing water from another source." The county should have alerted the trial court by requested instruction or more adequate exception to the additional point that the Conrads were limited to the difference in the value of the land before and after the pollution occurred. Having failed to do so, the county cannot now object. Rule 196, Rules of Civil Procedure; Berhow v. Kroack, 195 N.W.2d 379 (Iowa).

II. *Liability.* Three assigned errors pertain to the liability of the county.

(a) The county argues that its previous use of tree sap made the danger of pollution open and obvious to the Conrads—therefore, no negligence existed on the county's part and the trial court should have directed a verdict accordingly.

■ The county does not refer us to water or pollution cases for this novel contention but cites cases involving an open and obvious condition of land which a possessor of the land permits to exist to the subsequent injury of a person coming onto the land. Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252; Weidenhaft v. Shoppers Fair of Des Moines, Inc., 165 N.W.2d 756 (Iowa); Meader v. Paetz Grocery Co., Inc., 259 Iowa 1101, 147 N.W.2d 211. Those cases have been limited somewhat by our more recent view that the possessor may be negligent if he should anticipate harm despite the open and obvious nature of the condition in question. Greenwell v. Meredith Corp., 189 N.W.2d 901 (Iowa); Restatement, Torts 2d § 343A. In any event, we think the county cannot analogize the cases it cites to the present one involving subsequent affirmative acts by the county. Mr. Conrad told the county engineer, the supervisor, and the auditor of his plans and asked them not to put tree sap on the roads, and he then built the pond. Notwithstanding, the county subsequently spread the tree sap and the pond became polluted. We know of no rule of law

which would absolve the county from its negligence in such circumstances, merely because the landowner knew the county previously used the polluting material. Such a rule would be very strange, and we would not be willing to accept it.

■ The county also argues it is entitled to a directed verdict on the negligence issue on two factual bases: tree sap had been used for several years previously without injury anywhere in the county, and no proof was adduced that the tree sap was the cause of the pollution in the pond. Under the evidence, these were fact matters for the jury and not valid grounds for a directed verdict.

■ (b) In Instruction 5 the trial court instructed the jury along the lines of the statute on maintenance of streets by cities and towns. § 389.12, Code, 1971. The court told the jury that boards of supervisors have the care, supervision, and control of county roads "and shall cause the same to be kept open, in repair and free from nuisance for anything that would endanger the safety of the public who are using the same, or who own property adjoining said road." The instruction concluded that violation of such duty constitutes negligence.

The county excepted to the portion of the instruction, "or who own property adjoining said road," for the reason that such clause enlarges the duty of the county in maintaining roads beyond the requirements of statute or common law.

This phase of the case is confusing. In the first place, § 389.12, which is paraphrased in the instruction, applies to cities and towns; the statutes applicable to counties are somewhat different and are found in §§ 309.67 and 319.1 of the Code.

But passing that matter, the instruction paraphrasing § 389.12 enlarges the duty arising from such statute beyond protection of persons who are using the road to persons who are outside the road. The county's exception to such enlargement of the duty is well taken.

Violation of the duty to maintain roads in safe condition results in liability to users of the road. Hall v. Town of Keota, 248 Iowa 131, 79 N.W.2d 784; Morse v. Town of Castana, 213 Iowa 1225, 241 N.W. 304; Lamb v. City of Cedar Rapids, 108 Iowa 629, 79 N.W. 366; Fulliam v. City of Muscatine, 70 Iowa 436, 30 N.W. 861; 63 C.J.S. Municipal Corporations § 846 at 187–188. That duty is not involved here. The county did have a duty here to the Conrads, not as users of the road but as persons outside the road who were harmed by the negligent manner in which the county performed one of its functions—in this case, maintaining roads. See e. g. Mapes v. Madison County, 252 Iowa 395, 107 N.W.2d 62; 57 Am.Jur.2d Municipal, School & State Tort Liability § 80 at 89–90; 20 C.J.S. Counties § 215 at 1067–1068. The trial court should have instructed the jury in terms of the obligation resting on the county to exercise due care in the performance of its functions rather than in terms of a statute on maintenance of roads.

(c) The county contends that by building the pond knowing the county used tree sap on roads, the Conrads assumed the risk of pollution as a matter of law.

The action is predicated on negligence. We recently sounded the death knell to assumption of risk as a separate defense in cases of this kind. Rosenau v. City of Estherville, 199 N.W.2d 125 (Iowa). Moreover, under the evidence in this particular case, we think the concept of assumed risk should not have been submitted under contributory negligence, as Rosenau permits to be done in appropriate cases. The Conrads were not required to anticipate that the county, which was forewarned that the Conrads were building a pond and was requested to desist from using tree sap, would negligently pollute the pond after it was constructed. Watson v. Drew, 197 So.2d 53 (Fla.App); Maytnier v. Rush, 80 Ill.App.2d 336, 225 N.E.2d 83; Mainfort v. Giannestras, 111 N.E.2d 692

(Ohio Com.Pl.); McKay v. Zuckerman, 104 R.I. 667, 248 A.2d 319; Socony Mobil Oil Co. v. Slater, 412 S.W.2d 349 (Tex. Civ.App.); Carabba v. Anacortes School Dist. No. 103, 72 Wash.2d 939, 435 P.2d 936. Persons normally have a right to expect that others will exercise due care. Jones v. O'Bryon, 254 Iowa 31, 116 N.W. 2d 461.

The county did not show that the pollution in the pond came in whole or in part from the tree sap applied to the roads in prior years.

Because of the errors as to the $4,000 damage claim and in Instruction 5, the case will have to be retried.

Reversed.

All Justices concur.