Charles PFEIFFER, Appellant,

v.

Wayne WEILAND, Appellee.

No. 2–56042.

Supreme Court of Iowa.

Feb. 19, 1975.

Rehearing Denied March 14, 1975.

Fuerste, Carew & Coyle, Dubuque, for appellant.

O'Connor, Thomas, Wright, Hammer, Bertsch & Norby, Dubuque, for appellee.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and REYNOLDSON, JJ.

REES, Justice.

This is an appeal by plaintiff from judgment entered on a jury verdict for defendant in an action seeking damages for injuries he allegedly sustained in a water-skiing incident. Following an adverse ruling on his motion for new trial, plaintiff appealed. We affirm.

The water-skiing mishap which gives rise to this controversy occurred in the late afternoon of June 28, 1969. At that time plaintiff, defendant, defendant's brother Dick Weiland and several other persons were engaged in a water-skiing operation on waters of the Mississippi River lying between Iowa and Wisconsin north of Dubuque. Defendant was at the helm of a small motorboat equipped for water skiing, and plaintiff and Dick Weiland were in the water behind the boat preparing to ski. At least one other person besides defendant was present in the boat and the other members of the party were looking on from shore.

In readying themselves to water ski, plaintiff and Dick Weiland grasped tow lines secured to the boat which, when fully extended, measured 75 and 50 feet in length respectively. After some communication between plaintiff and Dick Weiland, and between Dick and the occupants of the boat, defendant suddenly accelerated the motorboat and it sped forward in the water. In the process plaintiff was pulled forward into the water, his arm entangled in the ski tow line, and was dragged forward for a distance. As a result of the mishap plaintiff allegedly sustained serious injury to his right arm. He brought this action to recover damages for that injury.

Plaintiff raises four issues on appeal, all subsumed in his single general assignment trial court committed reversible error in failing to sustain his motion for new trial. Succinctly stated, the issues presented for review are:

(1) Trial court erred in instructing the jury plaintiff's contributory negligence would bar his recovery rather than reduce it by a percentage factor under the maritime comparative negligence rule.

(2) Trial court erred in failing to instruct the jury the negligence of defendant's brother Dick Weiland, if any they found, was chargeable to defendant under the Iowa boat owner's liability law.

(3) There was insufficient evidence in the record plaintiff was wearing improper clothing at the time of the accident to justify trial court in submitting to the jury as a specification of contributory negligence that plaintiff was wearing improper clothing for the water-skiing activity he was engaged in at the time he sustained injury.

I. Plaintiff's first assignment, *i. e.,* his contention trial court erred in instructing the jury plaintiff's contributory negligence would bar his recovery rather than reduce it by a percentage factor under the maritime comparative negligence rule proceeds on three basic premises:

(a) The tort of which plaintiff complains is maritime in nature and his claim therefore is cognizable in admiralty because the tort occurred on navigable waters of the Mississippi River.

(b) When an action in tort cognizable in admiralty is brought in a state court that court must apply general maritime law rather than state law in determining rights and liabilities of the parties.

(c) The maritime rule of comparative negligence rather than the state law of contributory negligence governs actions sounding in tort cognizable in admiralty.

Section 1333(1), 28 U.S.C.A. provides:

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

■ State court jurisdiction of claims cognizable in admiralty or claims arising under general maritime law derives from the "saving to suitors" clause of § 1333(1) set out above. See Benedict on Admiralty, 6th Ed., Vol. 1, Ch. 4, p. 33, et seq.; 2 C.J.S. Admiralty § 13, p. 104; 2 Am.Jur.2d, Admiralty, § 105, p. 782.

■■ The last two of plaintiff's three premises set out above are apparently well grounded. It is now generally recognized that if an action in tort is cognizable in admiralty maritime law governs with respect to the rights and liabilities of the parties even though suit is brought in a state court by virtue of the "saving to suitors" clause. Maritime law, not state law, applies in maritime tort cases not involving death even though the tort occurs or is consummated within the territorial waters of a state. See generally Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550; Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143.

■■ Under general maritime law, contributory negligence of the plaintiff is not

regarded as a complete defense for a defendant charged with negligence, but instead requires an apportionment of damages. Where a maritime tort claim not involving death is litigated in state court, then, the rule of comparative negligence applies notwithstanding any contrary state law of contributory negligence. Pope & Talbot v. Hawn, *supra.* See Benedict on Admiralty, *supra,* at 38, 1972 Supp. to 6th Ed., and cases there cited. 2 Am.Jur.2d, Admiralty, § 114, p. 788. See Annot. 63 A.L.R.2d 348, 349. See also Annots. 59 A.L.R. 504, 50 A.L.R. 455, for discussion of the different rule applicable to maritime tort cases involving death.

Assuming the validity of the last two premises on which he bases his claim trial court erred in refusing to submit an instruction on the maritime comparative negligence rule, the crucial question remaining with respect to plaintiff's first assignment is whether the first of his three premises set out is valid, *i. e.,* whether the tort of which he complains is maritime in nature and therefore cognizable in admiralty. Only if the claim is cognizable in admiralty can it be said trial court erred in refusing to instruct the jury with respect to maritime law, for only if the claim is so cognizable would maritime law have been applicable.

■ To be cognizable in admiralty, a tort claim must be maritime in nature. Courts of many jurisdictions have long held to the belief locality alone determines whether a tort is maritime in nature and that all torts occurring on navigable waters are cognizable in admiralty. See 2 Am.Jur.2d, Admiralty, § 81, pp. 765–766. See n. 344, p. 639, 28 U.S.C.A. § 1333, for a number of federal court decisions in which this position is taken. The locality-alone test for determining admiralty tort jurisdiction is generally thought to have derived from The Plymouth, 70 U.S. (3 Wall.) 20, 36, 18 L.Ed. 125, where the Supreme Court said: ". . . (E)very species of tort, however occurring and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance."

For some time doubt has been cast on the validity of the locality-alone test thought to have been mandated by The Plymouth. Benedict in particular, voicing what has come to be known as "Benedict's doubt", has long contended admiralty jurisdiction in the secondary locale, *i. e.,* on inland navigable waters, depends on the existence of some relationship between the tort and commerce and navigation. He has argued admiralty jurisdiction attaches in cases involving torts occurring on inland navigable waters *only* when such torts have a significant relationship to shipping and navigation. See Benedict on Admiralty, 6th Ed., Vol. 1, § 127, pp. 350–351.

Until recently "Benedict's doubt" appears to have received little support from the courts, most holding admiralty jurisdiction of torts, independent of any maritime nature or subject matter, depends exclusively upon the locality of the tort's occurrence. See *e. g.* Victory Carriers, Inc. v. Law, 404 U.S. 202, 205, n. 2, 92 S.Ct. 418, 421, 30 L.Ed.2d 383, and citations. *Cf* Peytavin v. Government Employees Ins. Co., 453 F.2d 1121, 1127 (5th Cir. 1972); Chapman v. City of Grosse Point Farms, 385 F.2d 962, 966 (6th Cir. 1967); Smith v. Guerrant, 290 F.Supp. 111, 114–115 (S.D.Tex.1968). The most recent Iowa-based case on the subject followed the majority view locality alone determines admiralty tort jurisdiction. Harris v. United Air Lines, Inc., 275 F.Supp. 431 (S.D.Iowa 1967).

Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454, decided just two years ago, casts grave doubt on the continued validity of the locality-alone test for determining admiralty tort jurisdiction. In that case owners of an airplane which crashed into Lake Erie after seagulls had been ingested into the jet motors of the plane brought suit in admiralty for loss of the aircraft against the city of Cleveland and various airport personnel. The United States District Court for the Northern District of Ohio dismissed the complaint and the Court

of Appeals for the Sixth Circuit affirmed. The Supreme Court granted certiorari and later affirmed, holding maritime locality alone is not a sufficient predicate for admiralty jurisdiction in aviation tort cases, and that in the absence of legislation to the contrary, claims arising from airplane accidents are not cognizable in admiralty unless the tort bears a significant relationship to traditional maritime activities.

Narrowly read, *Executive Jet* appears to hold "maritime locality alone is not a sufficient predicate for admiralty jurisdiction in *aviation* tort cases". (Emphasis ours). See 409 U.S. at 261, 93 S.Ct. at 501, 34 L.Ed.2d at 463. Repeatedly emphasized in the opinion are the "special problems" involved in applying a locality-alone test for admiralty jurisdiction to airplane crashes where the locus of the tort on navigable waters is "wholly fortuitous". Several federal courts have given *Executive Jet* just such a narrow reading, holding the Supreme Court there rejected the locality-alone test for admiralty tort jurisdiction only in cases involving claims arising from airplane accidents. See Maryland v. Amerada Hess Corp., 356 F.Supp. 975, 976–977 (D.C.Md. 1973). Significantly, however, several circuit courts of appeal have declined to place such a narrow reading on *Executive Jet* and have concluded the Supreme Court's decision in that case amounted to a repudiation of the locality-alone test for admiralty jurisdiction in virtually all manner of cases involving torts occurring on navigable waters.

In Crosson v. Vance, 484 F.2d 840 (4th Cir. 1973), the Fourth Circuit Court of Appeals held admiralty jurisdiction would not reach a claim for personal injury by a water skier against the allegedly negligent operator of a towing boat where there was no showing the mishap was connected with traditional maritime activity. In so holding the court relied heavily on *Executive Jet*, where in a footnote the Supreme Court seemingly criticized a simplistic application of the locality-alone test for admiralty tort jurisdiction to non-aviation cases involving an injury to a swimmer by a surfboard and injuries to a water skier. Crosson v. Vance, *supra*, at 842, citing *Executive Jet, supra*, 409 U.S. at 255–256, 93 S.Ct. at 498, 34 L.Ed.2d at 459–460. The same result was reached on similar facts in Adams v. Montana Power Co., 354 F.Supp. 1111 (D.C. Mont.1973).

In Kelly v. Smith, 485 F.2d 520 (5th Cir. 1973), the Fifth Circuit Court of Appeals dealt with a consolidated action for injuries sustained by deer poachers who were fired upon by the caretaker of a private hunting preserve on an island in the Mississippi River. Citing *Executive Jet*, the court preliminarily noted maritime locality alone is not sufficient to sustain maritime jurisdiction and the wrong must bear a significant relationship to maritime activity in order to be cognizable in admiralty. The court ultimately concluded the injury causing rifle fire directed at plaintiff's small vessel as it operated on a navigable stretch of the river presented sufficient danger to maritime commerce for federal courts to assume jurisdiction in admiralty.

Other courts dealing with *Executive Jet* have taken what might be termed an intermediate position, recognizing on the one hand the Supreme Court's decision there has extensively altered the strict locality test for admiralty tort jurisdiction, but holding on the other hand that the operation of a boat, be it for pleasure or engaged in commerce, is a traditional maritime activity to which admiralty jurisdiction may extend. St. Hilaire Moye v. Henderson, 496 F.2d 973 (8th Cir. 1974); Oppen v. Aetna Ins. Co., 485 F.2d 252 (9th Cir. 1973).

But for the different results reached, *Henderson* and *Oppen* can be reconciled with decisions such as that in Crosson v. Vance, *supra*. All the courts broadly agree locality alone is no longer determinative of admiralty tort jurisdiction. All seem to agree that while the fact an injury occurred on navigable waters would be a *significant factor* in determining whether a given tort claim is cognizable in admiralty, other fac-

tors must be considered as well, including "the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and type of injury". See St. Hilaire Moye v. Henderson, *supra*, 496 F.2d at 978, quoting from Kelly v. Smith, *supra*, 485 F.2d at 525. The courts part company only when passing on the essentially factual question whether a given boating activity constitutes a traditional form of maritime activity.

 Without attempting to reconcile the cases, it seems clear *Executive Jet* undercuts Harris v. United Airlines, Inc., *supra*, to the extent locality alone can no longer be the test for admiralty jurisdiction in tort cases involving airplaine crashes on navigable waters. Moreover, in view of the interpretation it has been given by a number of federal courts, *Executive Jet* must also be read for the proposition maritime locality alone is insufficient to lend a maritime character to non-aviation causes of action sounding in tort brought in Iowa courts. For a cause of action sounding in tort to be cognizable in admiralty and for an Iowa court to be bound by general maritime law, a showing must be made that the tort not only occurred on navigable waters, but that it had some connection with "traditional forms of maritime commerce and navigation". Executive Jet; Crosson v. Vance; Kelly v. Smith; St. Hilaire Moye v. Henderson, all *supra*.

 The record in this case clearly establishes the water-skiing mishap giving rise to plaintiff's cause of action occurred behind an island in the Mississippi River, away from the main current of the river, and in an area where the water was too shallow to permit ongoing commercial navigation. Plaintiff, defendant and the other members of their party were engaged in a strictly recreational activity having no relationship with and presenting no danger to traditional maritime commerce and navigation. It would be difficult for us to perceive an incident occurring on navigable waters having less relationship to traditional forms of maritime activity. See Crosson v. Vance, *supra*.

It therefore necessarily follows plaintiff's cause of action would not be cognizable in admiralty under the prevailing test for admiralty tort jurisdiction. Accordingly, we conclude and hold trial court was not bound to instruct the jury on maritime law and did not err in submitting an instruction on the Iowa law of contributory negligence. The first issue plaintiff raises on appeal is therefore without merit.

II. The second issue presented for review requires an interpretation of § 106.18, The Code, 1966 as amended, which provided:

> "The owner and operator of any undocumented vessel shall be liable for any injury or damage occasioned by the negligent operation of such vessel."

Plaintiff contends trial court erred in failing to submit to the jury the question of defendant's negligence generated by evidence of the negligence of defendant's brother Dick Weiland. Plaintiff argues the command-response relationship which existed between Dick and defendant, the owner and helmsman of the boat pulling plaintiff at the time of the mishap, placed Dick in the position of an "operator"of the boat, for whose negligence defendant would be liable as the owner of the boat under § 106.18.

At the time of the accident Dick was in the water behind the boat preparing to ski. The evidence establishes he was communicating with the occupants of the boat and that defendant usually operated the boat according to the directions he received from the skiers either directly or through other passengers in the boat. What communication took place between Dick and the defendant immediately prior to the boat's sudden acceleration was the subject of some dispute at trial, some witnesses testifying Dick yelled "hit it", other witnesses testifying he directed defendant to proceed slowly forward.

Plaintiff's theory defendant would be liable as owner of the boat for his brother

Dick's negligence as an operator was before the court under the allegations of plaintiff's amended petition. Trial court dealt with the legal questions so arising by making an adjudication of points of law under rule 105, Rules of Civil Procedure. Trial court appears to have found § 106.18 was inapplicable to the case in that defendant's brother Dick was not an "operator" of the boat within the intendment of the statute because he did not have actual physical control of the boat, and that consequently his negligence, if any, could not be chargeable to defendant under the statute.

In its adjudication of points of law, trial court appears to have gone beyond the questions raised by plaintiff's pleadings concerning Dick's status as an "operator" of the boat and defendant's resultant potential liability as an owner for his negligence under § 106.18. The court apparently apprehended the issue as one involving the question of defendant's liability for Dick's negligence as a joint venturer and concluded defendant could not be held liable under such circumstances because negligence may not be imputed among joint venturers. See Annot., 63 A.L.R.2d 343, 361.

Defendant treats this issue in his brief and argument as if the question is primarily one of the imputability of negligence among joint venturers. Plaintiff insists the issue is narrower, involving only defendant's potential liability as an owner under § 106.18. We tend to agree with plaintiff's position in this regard, and conclude the crucial question is whether defendant's brother Dick was an "operator" of the boat within the intendment of § 106.18, whose negligent operation of the boat could be chargeable to defendant, the "owner", under the statute.

As noted above, trial court determined that actual physical control is essential to the definition of "operator" as used in § 106.18, and concluded defendant's brother Dick in issuing commands to the boat failed to assume such physical control. Therefore, the court found Dick was not an "operator" whose "negligent operation" might be

chargeable to defendant, the boat owner, under the statute.

The terms "operator" and "operation" were not defined in chapter 106, The Code, 1966. "Operate" was defined in § 106.2(7) to mean "to navigate or otherwise use a vessel or motorboat".

The terms "operation" and "operator" have taken on a variety of meanings in the decisions of other courts. See generally, 29A Words and Phrases, Perm.Ed., pp. 441–459 and 477–483. We have found no pronouncement of this court construing the terms "operator" and "operation" as they appeared in § 106.18, but the term "operator" appears variously in our codified law dealing with motor vehicles. In that context an operator is defined as "every person . . . who is in actual physical control of a motor vehicle upon a highway". Section 321.1(42), The Code; § 321A.1(7), The Code.

It seems to us worthy of note that § 106.15, which governed the operation of vessels towing water skiers, speaks of the requirement for a "responsible person" to be in the boat in addition to the operator to observe the progress of a person being towed. It would appear the purpose of this statute is to protect water skiers, by requiring that a person other than the operator be present in the boat to advise the operator of the skier's position. While undoubtedly the additional person would thereby "control" to some extent the operation of the boat, the clear implication in the statute is that in so doing he would not become an "operator".

A reading of § 106.18 together with § 106.15, as illuminated by §§ 321.1(42) and 321A.1(7), The Code, impels us to conclude the term "operator" as used in § 106.18 was intended to mean one who is in actual physical control of the vessel. It therefore follows defendant's brother Dick, not actually being in such control, was not an "operator" within the contemplation of the statute, whose negligent operation

could be chargeable to the defendant. Trial court correctly reached that conclusion in its ruling on points of law under rule 105, R.C.P., and therefore properly refused to submit to the jury the instruction on the issue requested by plaintiff.

III. The final issue presented for review on this appeal centers around plaintiff's contention there was insufficient evidence in the record to justify submission of an instruction to the jury relatable to defendant's specification of contributory negligence grounded on the claim plaintiff was wearing improper clothing at the time of his accident. Plaintiff contends trial court committed reversible error in submitting to the jury instruction # 16, which reads as follows:

"Defendant has charged that plaintiff was negligent in wearing inappropriate clothing so that he could not feel that his arm had become entangled in the tow line.

"You are instructed that at the time and place in question the plaintiff was required to wear clothing appropriate to the water skiing operation and to avoid wearing clothing which would be inappropriate to the water skiing operation in such manner of wear as would be worn by an ordinary, reasonably prudent person, acting under the same or similar circumstances.

"A failure to observe this provision of law would constitute negligence."

The record clearly establishes that plaintiff at and prior to the time of the accident was wearing what is known as a "wet suit", an all-enveloping rubber garment about one-quarter inch thick. The wet suit consisted of two pieces, the top covering the entire upper portion of plaintiff's body including his arms from shoulder to wrist, the bottom covering his lower torso and legs.

We have repeatedly said a trial court must submit to the jury only those issues raised by both pleadings and proof. Wenndt v. Latare, 200 N.W.2d 862, 870 (Iowa 1972); Adams v. Deur, 173 N.W.2d 100, 113 (Iowa 1969); Dopheide v. Schoeppner, 163 N.W.2d 360, 364 (Iowa 1968) and citations. We have also said "the theories of both parties to a lawsuit, as far as they are supported by the pleadings and substantial evidence, must be submitted. and it is prejudicial error to fail to do so". Doser v. Interstate Power Co., 173 N.W.2d 556, 559 (Iowa 1970).

The issue of plaintiff having worn clothing inappropriate to the water-skiing operation was raised in defendant's answer as an affirmative defense. Therefore, the sole question under this assignment is whether there was sufficient evidence adduced at trial concerning defendant's contention plaintiff's clothing was inappropriate to justify submission of instruction # 16 to the jury.

While it is true there is little direct evidence in the record concerning the appropriateness of plaintiff's clothing, i. e., the wet suit, there was a continuing and ongoing factual dispute at trial as to whether plaintiff's arm was entangled with the tow line when the boat pulled away causing his injuries. Plaintiff testified that if the line had been around his arm before defendant started the forward movement of the boat he would not have felt it through the wet suit he was wearing. He further testified the wearing of the wet suit would not have constituted a hazard had the boat been operated properly.

The testimony of the plaintiff himself was sufficient to warrant the submission of instruction # 16 to the jury. His statement he would not have felt the rope around his arm because of the thickness of his wet suit raises at least inferentially an issue as to whether his clothing was appropriate for the activity in which he was engaged. The inappropriateness of the clothing for such activity was pleaded as an element of contributory negligence by the defendant and the plaintiff's testimony standing alone would have and did justify the trial court in submitting instruction # 16.

IV. Trial courts have broad but not unlimited discretion in determining whether a verdict effectuates substantial justice between the parties. Rule 344(f)(3), R.C.P. We have repeatedly said we will not reverse a trial court ruling on a motion for new trial unless there is a showing the trial court abused its discretion. There is no clear showing trial court abused its discretion in overruling plaintiff's motion for a new trial here.

We find no reversible error in this case and affirm the trial court.

Affirmed.

All Justices concur, except REYNOLD-SON, J., who dissents.

REYNOLDSON, Justice (dissenting).

I respectfully dissent from the majority's holding in division III. The evidence was wholly inadequate, in my view, to generate a jury issue relative to plaintiff's skiing apparel. It was clothing customarily worn by persons exposed to water in cooler weather.

Defendant as owner (and now held to be operator) of the motor boat had no hesitation in towing plaintiff, so clothed, nor did defendant warn or caution plaintiff in any way. Apparently he did not consider the rubber garment inappropriate until some time after the event. His belated reasoning now is the equivalent of telling someone given a "hot-foot" that had he been bare-footed, he would have felt the heat in time to avoid the burn; or contending a farm employee was negligent on a cold winter day in wearing heavy, insulated coveralls which prevented him from feeling and avoiding the tractor's exposed power take-off shaft before it gripped his clothing and injured him.

If defendant was not negligent in causing plaintiff to become entangled in the rope, plaintiff's attire was immaterial. If defendant was negligent, I find no evidence in this record which would justify a finding plaintiff should have anticipated that negligence in selecting his skiing equipment. Ordinarily, one may presume exercise of due care by others. Jorgensen v. Horton, 206 N.W.2d 100, 105 (Iowa 1973); Conrad v. Board of Supervisors of Lee County, 199 N.W.2d 139, 144 (Iowa 1972).

The standard of conduct which ordinarily applies in negligence cases is the care "of a reasonable man under like circumstances." Restatement (Second) of Torts § 283, quoted in Kastler v. Iowa Methodist Hospital, 193 N.W.2d 98, 101 (Iowa 1971). Taking at face value defendant's testimony that although he knew plaintiff's wet suit was inappropriate and diminished plaintiff's sensory perception he nonetheless towed him without complaint, defendant was under obligation to exercise additional care to compensate for plaintiff's handicap. See generally 2 Harper and James, The Law of Torts § 16.12, p. 941; Prosser, Law of Torts § 34, pp. 180–81 (4th Ed. 1971).

Submitting plaintiff's contributory negligence to the jury on this issue was error.

I would reverse and remand for new trial.