[Civ. No. 31168.   Second Dist., Div. Five.   Feb. 27, 1968.]

DON BLEVENS, Plaintiff and Appellant, v. NICK SFETKU, Defendant and Respondent

Jones & Tollefson and Philip F. Jones for Plaintiff and Appellant.

Morgan, Wenzel, Lynberg & Morris, John P. McNicholas and George W. King for Defendant and Respondent.

HUFSTEDLER, J.—Plaintiff appeals from a judgment for the defendant entered after defendant's motion for nonsuit was granted upon completion of plaintiff's opening statement to a jury. The appeal is presented on the clerk's transcript and on a settled statement in lieu of a reporter's transcript.

Plaintiff's complaint alleged a cause of action for damages for personal injuries he sustained in a waterskiing accident caused by defendant's negligent operation of a motorboat.

The injury occurred on May 10, 1963, on the Colorado River, south of Parker Dam. The answer denied the charging averments of the complaint and alleged the defenses of contributory negligence and assumption of risk. The pretrial order restated the issues framed by the pleadings.

The opening statement, which is made a part of the settled statement on appeal, is as follows: "On May 12, 1963, plaintiff and another man named Bob Burns were water skiing on the Colorado River at a point about five miles south of Parker Dam, being towed at that time by a boat owned and operated by defendant NICK SFETKU. Both plaintiff and Burns were being towed by separate ropes behind the defendant's boat, Burns being to the right of plaintiff and the rope which was towing Burns being some 20 or 30 feet longer than the rope towing plaintiff so that Burns, during the course of the skiing, was to the right and to the rear of plaintiff. Neither plaintiff nor Burns gave any compensation of any sort to defendant, but were skiing at defendant's invitation.

"The defendant's boat pulled the two skiers for approximately 200 yards across the river in the direction of the California shore, and then turned to the left. At approximately that time, Burns fell into the water and let go of his ski rope. The defendant continued to tow plaintiff, who had remained on his ski, for approximately 200 yards down stream and then made a rather sharp left turn again to head back to the place where Burns was still in the water. As this final turn occurred, the rope by which plaintiff was being towed slackened because of the rather sharp turn of the boat, causing plaintiff to lose so much speed that he was unable to remain on top of the water on his ski. He then sank into the water and at the same time let go of the rope by which he had been towed. The boat being operated by defendant at this point was moving very slowly, and the rope by which Burns had been towed was pulling past the plaintiff in the water, under his arm. Plaintiff then took hold of this latter rope with his hands and began to pull it by him in order to avoid rope burn or entanglement. Just before the rope end passed plaintiff, who was then floating in the water and partially submerged, defendant suddenly accelerated the speed of his boat, and the end of the rope, which had previously been pulling Burns, tangled around plaintiff's ankle and pulled him under water for a number of feet before the resistance caused by plaintiff's entire body being under water caused the rope to break. Plaintiff's ankle, around which the rope

became entangled, was severely injured, and plaintiff sustained damages thereby, both general and special, for which compensation is being sought in this action.''

After the plaintiff had completed his opening statement, counsel for defendant moved for judgment of nonsuit on the sole ground that section 661.1 of the California Harbors and Navigation Code applied to prevent recovery by the plaintiff upon the facts stated in the opening statement. For the purposes of the motion, counsel stipulated that the injury to the plaintiff took place on the California side of the Colorado River. The court granted the nonsuit on the sole ground that section 661.1 foreclosed recovery.

Section 661.1 of the California Harbors and Navigation Code at the time of the injury provided : ''No person who as a guest accepts a ride in any vessel upon the waters of this State without giving compensation for such ride, or any other person has any right of action for civil damages against the operator of the vessel or against any other person legally liable for the conduct of the operator on account of personal injury to or the death of the guest during the ride, unless the plaintiff in such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the operator or establishes that such operator was under the influence of any narcotic drug, barbiturate or marijuana. As used in this section a 'guest' shall be deemed to include any person or persons being towed by any vessel on water skis or an aquaplane or a similar device.''

The appeal presents the question : Does section 661.1 of the Harbors and Navigation Code apply in an action in the state court for damages for personal injuries caused by negligent operation of a motorboat on the waters of an interstate navigable stream ? We hold that it does not apply. The statute would conflict with established federal maritime common law and with the federal Motorboat Act of 1940 if thus applied. The Legislature has expressed its intent that the provisions of section 661.1 of the Harbors and Navigation Code shall be construed to avoid constitutional infirmity.[1] We conclude therefore that the Legislature did not intend the statute to apply to this maritime tort.

---

[1] ''§ 399. The provisions of this Division shall not be construed to apply to the extent to which they are not within the legislative power of this state, except in so far as they may be permitted to apply under the provisions of the Constitution of the United States or the acts of Congress.'' Section 661.1 is within the same division as section 399 of the code.

## Subject Matter Jurisdiction

" [T]he admiralty jurisdiction of the United States extends to all waters, salt or fresh, with or without tides, natural or artificial, which are in fact navigable in interstate or foreign water commerce, whether or not the particular body of water is wholly within a state, and whether or not the occurrence or transaction that is the subject-matter of the suit is confined to one state." Gilmore and Black, The Law of Admiralty (1957) sections 1-11, pages 28-29.

The power of United States courts to draw upon and administer the maritime law derives from constitutional language extending the judicial power of the United States to "all Cases of admiralty and maritime Jurisdiction." U.S. Const., art. III, § 2.) ▮ Jurisdiction of state courts in maritime cases is derived from the "saving to suitors" clause found in section 24(3) of the Judicial Code, 28 U.S.C.A., section 41(3), which "in all civil cases of admiralty and maritime jurisdiction" saves to suitors "the right of a common law remedy where the common law is competent to give it."

▮ Generally speaking, the saving-to-suitors clause permits state courts to assume subject matter jurisdiction of cases by a suitor who holds an in personam claim, which might be enforced by libel in personam in admiralty. In such cases there is concurrent jurisdiction of the subject matter in the state courts, and in the federal district courts on the civil side in appropriate cases, and on the admiralty side of the federal district courts. (E.g., *Intagliata* v. *Shipowners & Merchants etc. Co., Ltd.* (1945) 26 Cal.2d 365, 370-371 [159 P.2d 1]; Gilmore and Black, *supra,* sections 1-13, page 33.) "The remedy afforded in the state court may be invoked to secure such rights 'as readily admit of assertion and enforcement in actions *in personam* according to the course of the common law.' (*Panama R.R. Co.* v. *Vasquez,* 271 U.S. 557, 561 [70 L.Ed. 1085, 1087, 46 S.Ct. 596]; see *Moore* v. *Purse Seine Net,* 18 Cal.2d 835, 837 [118 P.2d 1]; *C. J. Hendry Co.* v. *Moore,* 318 U.S. 133 [87 L.Ed. 663, 63 S.Ct. 499].)" *Intagliata* v. *Shipowners & Merchants etc. Co., Ltd., supra,* 26 Cal.2d at p. 370.

▮ We judicially notice that the Colorado River is a navigable interstate stream. Plaintiff's claim of damages for injuries sustained in this motorboat accident is a maritime cause of action which can be maintained in the state court under the saving-to-suitors clause.

532

## Applicable Law

██ A state court is not free to apply its own substantive law to a maritime cause of action simply because the state court has subject matter jurisdiction. The applicable law is not determined by the choice of forum. General substantive maritime law must be applied even though suit is brought in the state court. (*Chelentis* v. *Luckenbach S. S. Co.* (1918) 247 U.S. 372 [62 L.Ed. 1171, 38 S.Ct. 501] ; *Pope & Talbot, Inc.* v. *Hawn* (1953) 346 U.S. 406 [98 L.Ed. 143, 74 S.Ct. 202] ; *Intagliata* v. *Shipowners & Merchants etc. Co., Ltd., supra,* 26 Cal.2d at p. 371.)

██ Plaintiff relies on *Southern Pac. Co.* v. *Jensen* (1917) 244 U.S. 205 [61 L.Ed. 1086, 37 S.Ct. 524] for the general principle that in a maritime cause of action states cannot enforce state substantive law if that law does or could contravene principles of general maritime law. *Jensen* held a state workmen's compensation statute unconstitutional as applied to a longshoreman who had been injured by a maritime tort. At that time the federal law contained no compensation statute for the injured worker. Mr. Justice McReynolds, writing for the majority in *Jensen,* however, observed: ''[I]t would be difficult, if not impossible, to define with exactness just how far the general maritime law may be changed, modified, or affected by state legislation. That this may be done to some extent cannot be denied.'' (244 U.S. at p. 216 [61 L.Ed. at p. 1098].)

Defendant argues that *Jensen* has been impaired by *Western Fuel Co.* v. *Garcia* (1921) 257 U.S. 233, 242 [66 L.Ed. 210, 214, 42 S.Ct. 89] ; *Grant Smith-Porter Ship Co.* v. *Rohde* (1921) 257 U.S. 469 [66 L.Ed. 321, 42 S.Ct. 157, 25 A.L.R. 1008] ; and *Caldarola* v. *Eckert* (1946) 332 U.S. 155 [91 L.Ed. 1968, 67 S.Ct. 1569]. He cites these cases for the proposition that local law can be validly applied in a maritime case if the subject matter is local even if the federal and state law conflict. The cases do not stand for the same rule and they do not support so sweeping a principle. *Garcia* was an action for wrongful death of a stevedore under the California wrongful death statute to which California's statute of limitation was successfully applied. The court characterized the subject (wrongful death) as maritime but local and said the state law could supplement the general maritime law upon such a local subject. *Rohde* was a libel in admiralty against the libellant's employer for compensation for an injury aboard a vessel in a navigable Oregon river. The Oregon Compensation Act pro-

vided that the act was in lieu of all claims against his employer on account of injury or death. The court held that the Oregon law applied to bar his remedy in admiralty and remitted him to the state compensation action. The "maritime but local" roundelay abruptly closed with the decision of *Davis* v. *Department of Labor & Industries of Washington* (1942) 317 U.S. 249 [87 L.Ed. 246, 63 S.Ct. 225], which substituted the "twilight zone" concept by which injured employees in cases involving compensation claims could avoid the state-federal badminton game by seeking relief under whichever law provided him a remedy. *Caldarola* involved the construction of a wartime contract in which private shipping lines operated government-owned vessels as "general agents" of the United States. A stevedore sued a general agent in a New York state court for personal injuries allegedly caused by defective equipment on the vessel. The New York Court of Appeals dismissed the action, holding that the agent under the contract did not have enough control of the ship to render him liable. The Supreme Court majority agreed with the court of appeal, stating, "[W]hether New York is the source of the right or merely affords the means of enforcing it, her determination is decisive that there is no remedy in its courts for such a business invitee against one who has no control and possession of premises." *Caldarola* v. *Eckert, supra,* 332 U.S. at p. 158 [91 L.Ed. at p. 1971].

Each of these cases concerns issues as to which there was no established maritime law differing from the state statutory or common law rule, and no compelling reason to require federal courts to create a federal rule. None of these cases stand for the proposition that in case of a conflict between state and federal maritime law, the state law could be applied. To the extent that *Caldarola* at least implied that state law could be applied to a maritime action where there was no specific maritime law to the contrary, it was sunk in 1953 with the decision of *Pope & Talbot, Inc.* v. *Hawn, supra,* 346 U.S. 406. Hawn sued on the civil side of a federal district court in Pennsylvania for personal injuries. The question was the availability of contributory negligence as a bar to his action. If Pennsylvania law applied, his recovery was doomed because a jury found he was contributorily negligent. The Supreme Court refused to permit application of Pennsylvania's rule. The court said: "The harsh rule of the common law [contributory negligence is a bar] is completely incompatible with modern admiralty policy and practice," which means that the admir-

alty rule of divided damages controls. Justice Black then drove the last nails into *Caldarola's* coffin: "Hawn's complaint asserted no claim created by or arising out of Pennsylvania law. His right of recovery for unseaworthiness and negligence is rooted in federal maritime law. Even if Hawn were seeking to enforce a state created remedy for this right, federal maritime law would be controlling. While states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court. These principles have been frequently declared and we adhere to them. See *e.g., Garrett* v. *Moore-McCormack Co.,* 317 U.S. 239, 243-246 [87 L.Ed. 239, 242-244, 63 S.Ct. 246, 249-251], and cases there cited. *Caldarola* v. *Eckert,* 332 U.S. 155 [91 L.Ed. 1968, 67 S.Ct. 1569], does not support the contention that a state which undertakes to enforce federally created maritime rights can dilute claims fashioned by federal power, which is dominant in this field."

The result presaged by Justice Traynor in *Intagliata* thus came to pass in *Hawn.* A similar result was reached in *Southport Transit Co.* v. *Avondale Marine Ways, Inc.* (5th Cir. 1956) 234 F.2d 947, holding that the state law of contributory negligence could not be applied to a common law action on a maritime tort claim prosecuted in a federal court on the civil side. (See *King* v. *Testerman* (E.D.Tenn. 1963) 214 F.Supp. 335, 336.)

Plaintiff in our case is not seeking to enforce a state-created right, but a right to recover for negligent injury by a boat operator, which is a right "rooted in federal maritime law" as firmly as it ever was in common law, and that right is not subject to dilution by a California statute limiting liability. This would be the rule even if the federal law were entirely silent upon the precise subject of negligence in operating motorboats, but silent it is not.

In 1940 Congress enacted the Motorboat Act (46 U.S.C.A. §§ 526-526t) which applies to "every vessel propelled by machinery and not more than sixty-five feet in length. . . ." (46 U.S.C.A. § 526.) Section 526*l*, as amended in 1958, provides in pertinent part, "(a) No person shall operate any motorboat or any vessel in a reckless or negligent manner so as to endanger the life, limb, or property of any person. To 'operate' means to navigate or otherwise use a motorboat or a vessel."

The Motorboat Act "was passed as a commerce measure

under the commerce clause of the Constitution.'' (*Davis* v. *United States* (9th Cir. 1950) 185 F.2d 938, 941.)[2]

If the California guest statute were construed to apply to this case, there would be a conflict between the federally imposed standard of conduct as stated in section 526*l* of title 46 prohibiting negligent or reckless operation of a motorboat endangering anyone, guests included, and the state statute preventing civil consequences from the breach of the same duty so far as guests are concerned.

The substantive consequences of injury from the operation of a motorboat on an interstate navigable stream must be the same regardless of which side of the stream was the site of the accident or where the action to recover damages is brought. The federal policy is expressly stated in the statutes comprising the Federal Boating Program of 1958, including section 527f: ''It is declared to be the policy of Congress to encourage uniformity of boating laws, rules and regulations as among the several States and the Federal Government to the fullest extent practicable, subject to reasonable exceptions arising out of local conditions. In the interest of fostering the development, use, and enjoyment of all the waters of the United States it is further declared to be the policy of the Congress hereby to encourage the highest degree of reciprocity and comity among the several jurisdictions. The Secretary, acting under the authority of section 141 of Title 14 shall to the greatest possible extent enter into agreements and other arrangements with the States to insure that there shall be the fullest possible cooperation in the enforcement of both State and Federal statutes, rules, and regulations relating to recreational boating.''

The need for uniformity is obvious. It would be intolerable for each state bordering the Colorado River to enact its own limitation-of-liability statutes controlling liability for personal injuries suffered in boating accidents on the river. The impact of liability cannot be permitted to change with the bend of the river or the vagaries of a particular navigator.

The judgment is reversed.

Stephens, J., and Aiso, J. pro tem.,* concurred.

---

[2]*Contra*: *Godinez* v. *Jones* (D. Puerto Rico 1959) 179 F.Supp. 135, 140: ''The statute invoked by [plaintiff] (the Motorboat Act of 1940, 46 U.S.C.A. §§ 526 to 526t) cannot by any stretch of the imagination, be considered as an 'Act of Congress regulating commerce.' . . .''

*Assigned by the Chairman of the Judicial Council.