Joyce **ST. HILAIRE MOYE**, Plaintiff,

v.

Emmett **HENDERSON** et al., Defendants.

No LR–73–C–51.

United States District Court,
E. D. Arkansas, W. D.

Oct. 17, 1973.

Henry Woods, of McMath, Leatherman & Woods, Little Rock, Ark., for plaintiff.

James D. Storey, of Wright, Lindsey & Jennings, Little Rock, Ark., for defendant Emmett Henderson.

George Pike, Jr., of Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., for defendants Basil Henderson, Doris Collins and Bill Hobson.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This is a suit in admiralty brought by Joyce St. Hilaire Moye against Emmett Henderson, Basil Henderson, Doris Collins, and Bill Hobson; the suit arises out of a boating accident that took place on the afternoon of June 6, 1971, on the Arkansas River, an admittedly navigable stream, near the City of Little Rock, Arkansas. As a result of the accident plaintiff sustained serious and permanent personal injuries, and in this action she seeks compensation for those injuries. She also seeks punitive damages. Jurisdiction is predicated upon 28 U.S. C.A. § 1333(1).[1]

The complaint alleges in substance that plaintiff's injuries were proximately caused by negligence on the part of all of the defendants, and that all of them are liable for the damages that plaintiff sustained; it is further contended that the alleged negligence of the defendant, Doris Collins, who was actually operating the boat at the time of the accident, is imputed to Emmett Henderson as "master" of the boat and to his father, Basil Henderson, as owner of the boat.

The complaint was filed on February 20, 1973. On March 6, 1973, defendants, Basil Henderson, Doris Collins, and Bill Hobson, filed their answer denying liability and also filed a cross claim against Emmett Henderson seeking indemnity or contribution from him should they or any of them be held liable to the plaintiff.

On March 28, 1973, Emmett Henderson filed a motion to dismiss the complaint on the ground that the case was not within the admiralty jurisdiction of the Court. The other defendants later joined in that motion. On June 8, 1973, the Court filed a Memorandum and Order overruling the motion, and thereafter, Emmett Henderson filed his separate answer denying liability and praying that the complaint be dismissed.

On the merits, the defendants deny that plaintiff's injuries were proximately caused by negligence on the part of any of the defendants, and they take issue with plaintiff on the issue of damages. Affirmatively, they contend that plaintiff was guilty of contributory negligence, and that she voluntarily assumed the risk of injury by sitting on the rear deck of the boat rather than in the rear seat.

The defendants also contend that in any event plaintiff cannot recover because she was a guest in the boat, and that recovery is precluded by Section 15 of Arkansas Act 453 of 1959, Ark.Stats. Ann., § 21–235, which provides that no person transported or riding as a guest on Arkansas waters shall have a cause of action against the owner or operator of such vessel for damages on account of any injury, death, or loss occasioned by the operation of such vessel "unless such vessel was wilfully and wantonly operated in disregard of the rights of others."[2]

The case has been tried to the Court, and this opinion incorporates the Court's findings of fact and conclusions of law.

Basil Henderson, one of the defendants herein, is the father of the defendant, Emmett Henderson. Pat Henderson is a nephew of Basil Henderson and a first cousin of Emmett Henderson.

---

1. There is no diversity of citizenship between the parties, all being citizens of Arkansas.

2. That provision is essentially the same as that which is applied to guest riders in motor vehicles by the Arkansas Automobile Guest Statute, Ark.Stats., Ann. § 75–913.

Defendant, Bill Hobson, is a close friend of the Henderson family.

At the time of the accident plaintiff's name was Joyce St. Hilaire; she was a divorcee who has remarried since the accident. She and the defendant, Doris Collins, were acquainted. Another party to be mentioned is Carolyn McRae, who was well acquainted with Pat Henderson's brother, Mike, who does not figure in the case. Doris Collins is substantially older than Emmett and Pat Henderson and Bill Hobson; however, in June, 1971, all of those individuals were adults.

Shorlty prior to the date of the accident Basil Henderson had purchased an eighteen-foot motor boat powered by a 225 horsepower inboard engine. This boat had a front seat and a rear seat; immediately behind the rear seat was a space referred to as a "deck". The boat's rudder and propeller were at the extreme rear of the boat and were underneath this deck. The deck was sufficiently large for rear seat passengers to sit upon it.

In the front of the boat there were a dashboard and a steering wheel, which was located on the right side of the vessel; on the right side of the vessel and at the right hand of the operator there was a single lever which controlled both gears and throttle. There were three gear positions, neutral, forward, and reverse.

On June 6, 1971, Basil Henderson turned the boat over to Emmett Henderson for use on a pleasure cruise on the Arkansas River. The cruise party consisted of Emmett Henderson, Pat Henderson, Bill Hobson, Doris Collins, Carolyn McRae, and plaintiff. The evidence reflects that on the night of June 5–6 plaintiff and Doris Collins had visited two or three nightclubs in Pulaski County, Arkansas, and had done a considerable amount of drinking; they returned to the Collins apartment about 2:00 a.m. on June 6, and accepted the invitation to join the cruise later in the day. While they may well have been suffering somewhat from their experience of the night before, there is no evidence that either one of them was intoxicated at the commencement of the voyage.

The boat was launched about 12:30 p.m. at the Burns Park launching ramp on the north side of the river. The male members of the party had one or two cases of beer in an ice chest and also had some whiskey, but there is no evidence that any whiskey was consumed prior to the accident. Plaintiff and Doris Collins brought along with them half a bottle of a type of wine known as "Cold Duck".

The boat was put into motion, and the party cruised up and down the river for some thirty to forty-five minutes, after which the boat was beached temporarily at a sandbar. During this phase of the journey, the three men were in the front seat of the boat and the three women were in the back seat.

Before stopping at the sandbar, the Henderson boat engaged in something of a race with another motor boat, and the Henderson party engaged in a degree of horseplay in that a hat would be thrown or blown into the river and then retrieved while the boat was in motion.

When the party left the sandbar, the seating arrangements were revised. There is a slight conflict as to just how the occupants of the boat were seated. While the conflict is not really material, the Court finds from a preponderance of the evidence that when the journey was resumed, Bill Hobson was at the controls and was sitting on the right of the front seat; Doris Collins and Carolyn McRae were also in the front seat, with the former occupying the middle position. The back seat passengers, plaintiff, Emmett Henderson, and Pat Henderson were not sitting in the back seat. Emmett Henderson was seated on the engine cover between the two seats. Plaintiff and Pat Henderson were sitting on the rear deck with their feet on the back seat; plaintiff was on the right-hand side of the boat, and Pat Henderson was on the left-hand side.

When the boat left the sandbar, it was headed downstream toward the series of bridges which cross the river and connect the cities of Little Rock and North Little Rock. As of that time the male members of the party had consumed a beer or two apiece, and the females had finished the Cold Duck, which involved each of them drinking two small glasses of it. The Court does not find that any of the occupants of the boat other than Doris Collins was affected by his or her consumption of alcohol to any substantial degree. As to Doris Collins, the Court finds that she was feeling and manifesting the effects of the Cold Duck to the extent that she was exhilarated or somewhat "high", as it is sometimes called.

As the boat proceeded downstream, Doris Collins asked to be permitted to operate the boat, and she represented falsely that she had had experience in the operation of boats of the type involved here. In point of fact, her only experience in operating a boat involved an outboard motor boat with a sixty horsepower engine, and she had never operated that except in the company of her former husband.

Carolyn McRae objected to Mrs. Collins being permitted to operate the boat, being of the opinion that she was too much under the influence of alcohol. Bill Hobson, who was operating the boat at the time, was not willing to permit Mrs. Collins to assume control without the consent of Emmett Henderson, but he suggested to Henderson that permission be given to Mrs. Collins to take over the wheel, and permission was granted. Mrs. Collins and Hobson changed positions, and the former took the wheel. This change of arrangement did not involve any significant alteration of the boat's speed or direction.

Mrs. Collins had no immediate problem with operating the boat, which, at the moment, involved nothing but steering it, and the accident presently to be described would in all probability not have occurred had not Pat Henderson decided that he wanted to water ski. He called on Mrs. Collins to stop the boat so that he could make his preparations and get into the water; Mrs. Collins apparently did not hear, and certainly she did not heed Henderson's first request that the boat be stopped. He repeated his request, by then a demand, in a loud and rough tone of voice, and Mrs. Collins reacted violently.

Instead of simply pulling the throttle-gear lever back into the neutral position, she pulled it completely through that position and thus threw the boat, which was moving about twenty-five miles an hour aided by the current, into reverse gear. When that happened, the bow of the craft plunged downward, and the stern of the boat came out of the water; at the same time, the boat veered to the left and very nearly capsized. Plaintiff and Pat Henderson were both thrown from the rear deck into the water. Henderson escaped injury, but plaintiff's right leg was struck near the knee by the whirling propeller, and she received a mangling injury to that limb. She sustained a compound, comminuted fracture of the right femur, and the propeller excised from her leg a large amount of muscle tissue; naturally, this injury was attended by a very serious loss of blood. The injury was serious and permanent.

Before discussing the legal issues in the case, the Court finds it convenient to state the inferences that it draws from the evidence with respect to claims of negligence, contributory negligence, and assumption of risk.

■■ The Court will say, first, that it does not find that Basil Henderson was guilty of any negligence in entrusting the boat to his son for the purpose of the cruise. Emmett Henderson, Pat Henderson, and Bill Hobson were all grown men; they were not intoxicated when Basil Henderson gave permission for the use of the boat, and he had no reason whatever to believe that the voyage would be attended by any mishap. It is alleged in the complaint that Basil

Henderson negligently failed to equip the boat with any life saving apparatus, but the absence of such apparatus had nothing to do with the accident or with plaintiff's injury. So, the Court concludes that if Basil Henderson is liable in the case, his liability is purely vicarious.

■ This Court does not find that the defendant, Hobson, was guilty of any negligence that was a proximate cause of plaintiff's injuries. To start with, he was not the master of the boat and except in connection with his own operation of it, he owed no duty of care toward his fellow passengers. While he suggested that it would be appropriate to permit Doris Collins to operate the boat, it must be remembered that in connection with her request to be allowed to operate it she assured both Hobson and Emmett Henderson that she was an experienced operator and would know what she was doing, and there is no evidence that either of them had any reason not to believe her. If it be argued that Hobson should have intervened and resumed control of the vessel when Pat Henderson demanded that it be stopped, the answer is that this accident happened in a split second, and Mr. Hobson simply had no opportunity to resume control, assuming that he was under any obligation to do so. In view of these negative findings with respect to Hobson, the complaint as to him will be dismissed.

■ The Court does find from a preponderance of the evidence that Doris Collins and Emmett Henderson were guilty of negligence proximately causing plaintiff's injuries. The Court also finds that plaintiff was guilty of negligence proximately causing plaintiff's injuries. The Court does not find that she "assumed the risk" of injury as that term is understood in Arkansas where "assumption of risk" is pleaded as a complete defense to a tort action. And the Court finds that the negligence of plaintiff was slight in comparison to the negligence of Doris Collins and Emmett

Henderson, particularly with respect to the negligence of the former.

■ With respect to Doris Collins, the Court finds that she falsely represented her ability to operate the boat, that she undertook to operate it while intoxicated to some degree, and that she was guilty of negligence when she threw the vessel into reverse gear. While she says that she "panicked" when Pat Henderson shouted to her to stop the boat, that affords no excuse for her action, nor does her actual inexperience in the operation of large inboard motor boats.

■ As to Emmett Henderson, he was in charge of the boat and owed a duty of care to the passengers thereon. The Court does not think that Henderson can be charged with negligence because he relied on the statements of Mrs. Collins about her experience, but the Court finds that he was guilty of negligence in permitting her to operate the boat over the protest of Carolyn McRae at a time when he knew or should have known that Mrs. Collins was feeling the effect of her drinks. The Court also finds that Henderson was guilty of negligence in another respect that will be mentioned in a moment.

■ The Court finds that plaintiff was guilty of negligence in sitting on the rear deck rather than in the rear seat. While the Court knows from observation of many boaters that people do sit in places other than the seats designed for their accommodation, that which is customary is not necessarily safe or prudent, and the Court thinks that plaintiff failed to use ordinary care for her own safety when she elected to sit on the deck while the boat was moving down the Arkansas River at a quite substantial rate of speed for a boat.

■ Counsel for the plaintiff earnestly contends that even if plaintiff was negligent in sitting on the deck, her negligence was not a proximate cause of her injury, that is to say, he argues that she would have been thrown out of the boat even if she had been sitting in the seat where she belonged. The Court

does not think so, and rejects counsel's argument.

 But if plaintiff was negligent in sitting on the deck, as the Court has just found that she was, Emmett Henderson was also negligent in permitting her to sit there. The Court will repeat that Henderson was in charge of the boat and had a right and duty to insist that the passengers conduct themselves in a manner consistent with their safety. He failed to do so.

 While the Court has found that plaintiff's injuries were due to the concurrent negligence of Doris Collins, Emmett Henderson, and the plaintiff, the Court does not find that either Doris Collins or Emmett Henderson was guilty of any wilful or wanton operation of the vessel without regard to the rights of others, which would take Section 15 of Act 453 of 1959 out of the case, assuming that it is applicable to a suit arising out of a motor boat accident taking place on navigable waters in Arkansas. And from both a legal and a practical standpoint the question of the applicability of that statute is the most important question in the case because, if the statute is applicable, plaintiff is not entitled to recover from any of the defendants.

 In approaching that question, the Court will first state that it adheres to the position taken by it in June of this year that the admiralty jurisdiction of the federal courts in Arkansas extends to motor boat accidents occurring on the navigable lakes and streams of this state.

The contention of the defendants based on Section 15 of Act 453 of 1959 has been briefed thoroughly by counsel for Basil Henderson, Doris Collins, and Bill Hobson, and his argument has been adopted by counsel for Emmett Henderson.

Counsel do not contend that as a matter of general admiralty law a guest passenger on a boat or vessel cannot recover for personal injuries received as a result of the operation of the vessel unless the conduct of the operator exceeds mere negligence and amounts to wanton or reckless misconduct or disregard of the rights of others. Nor do counsel appear to contend that the provision in question overrides the general admiralty rule merely because it is a statutory provision rather than a rule of Arkansas common law.

As the Court construes it, the argument is that the Federal Boating Act of 1958 heretofore cited was, in effect, an enabling act authorizing the legislatures of the several states to regulate small boating activities on their waters whether navigable or non-navigable; that Act 453 was passed on the basis of the federal statute, and that Section 15 of that Act is a valid and binding inclusion, and that it is applicable here. The Court does not accept this argument.

The federal statute in question did a number of things. Section 3 of the Act established a uniform system of identifying by numbers small craft operating on the navigable waters of the United States. Section 6 of the Act amended Section 13 of the Motor Boat Act of 1940 so as to prohibit the negligent or reckless operation of motor boats on navigable waters and so as to require reports of certain types of motor boat accidents. Section 9 declared it to be the policy of Congress to encourage uniformity of boating laws, rules and regulations among the several states subject to reasonable exceptions arising out of local conditions. Section 13 provided that federal laws relating to motor boats and their operation should be enforced by federal law enforcement officers, and that state laws should be enforced by state and local officers. And Section 13(4), upon which defendants particularly rely, provided that "Nothing herein shall interfere with, abrogate or limit the jurisdiction of any State: *Provided, however,* That the Secretary shall not approve any State system for numbering which does not fully comply with the standards set forth in section 3(c)."

■ The Court does not consider that the Boating Act of 1958 purported to deal with private remedies for injuries arising out of motor boat accidents occurring on navigable waters or to confer upon the states the power to alter by statute general principles of admiralty law. To construe the statute as vesting such power in the individual states would militate against the very policy of uniformity of law among the several states announced in Section 9 of the Act.

How such power would undermine the desired uniformity of law in the field of motor boat operation is illustrated by the very section of the Arkansas Act invoked by the defendants. As pointed out by counsel for plaintiff in his brief, Act 453 of 1959 is obviously based upon the Model State Boat Act of 1959, and Section 1 of the Arkansas statute, Ark. Stats.Ann., § 21-221, states that it is the public policy of this state "to promote safety for persons and property in and connected with the use, operation and equipment of vessels and *to promote uniformity of laws relating thereto.*" (Emphasis added). But, Section 15 of the Act is not a "uniform provision." No corresponding provision appears in the Model Act, and the Court agrees with counsel for plaintiff that the Arkansas Legislature simply saw fit to insert in the boating statute the "guest rider" provision which appears in the Arkansas motor vehicle code. If the Arkansas Legislature had the power under the federal statute to enact this particular provision and apply it to accidents occurring on navigable waters, it would also have had the power to so enact and apply any other peculiar rule or principle of Arkansas tort law, including, for example, the Arkansas statutory rule that contributory negligence is a complete defense in a personal injury suit if the negligence of the plaintiff is equal to or greater than the negligence of the defendant. Ark.Stats.Ann., § 27-1730.1, and § 27-1730.2.

■ Had Congress intended in 1958 to vest such legislative power in the several states, it could have said so easily. The Court holds, therefore, that Section 15 of Act 453 of 1959 is not applicable to motor boat accidents, such as the one involved here, which occur on navigable lakes and streams in Arkansas.

■ Taking up now the claims of vicarious liability asserted by plaintiff against Emmett Henderson and Basil Henderson, the Court finds without difficulty that Emmett Henderson is responsible not only for his own negligence but also for that of Doris Collins.

Regardless of whether the nautical term "master" should be applied to Emmett Henderson or not, he was in charge of the boat and stood in the position of the owner. He permitted Mrs. Collins to operate the boat; and he had the right and duty to control her operations of the craft, and is responsible for her operational negligence.

As far as Emmett Henderson is concerned, the situation presented here does not differ in principle from that presented in the non-maritime case of Watt v. United States, E.D.Ark.1956, 123 F.Supp. 906, tried and decided by the late Judge Lemley. In that case a wife was operating her husband's car in his presence, and the Court found that her negligence was imputed to him on a simple theory of agency. The Court said (p. 915 of 123 F.Supp.):

"While the relationship of principal and agent or of master and servant, and the existence of a right to control the driver in the operation of the vehicle are not established as a matter of law by the mere presence of the owner in the vehicle at the time of the accident, such presence creates an inference that he has the right to control and direct the driver or that the latter is his agent or servant. . . ."

In his brief counsel for Emmett Henderson cites and principally relies upon Strom v. Anderson, W.D.N.Y.1953, 114 F.Supp. 767. On the basis of that decision counsel argues that absent a showing of negligent entrustment, Emmett

Henderson cannot be held liable for the negligence of Doris Collins. Apart from the fact that the Court has found that Emmett Henderson was negligent in permitting Mrs. Collins to operate the boat, the Anderson case is readily distinguishable from this one since, in that case, the owner of the boat was not on board when the accident occurred and had no control or right of control over the operation. Here, as has been seen, Emmett Henderson was aboard and in charge of the boat at the time of the accident.

As to Basil Henderson, the situation is quite different. No claim is made that the boat was unseaworthy in any respect proximately contributing to the accident. The Court has found that Basil Henderson was not negligent in turning the boat over to his son; Basil Henderson was not aboard the boat at the time of the accident, and he had nothing to do with the operation of the boat. He was simply a non-negligent bailor of the boat and is not liable for negligence in its operation.

In 80 C.J.S. Shipping § 79, it is said:

"Generally speaking, those persons are liable for torts committed in the operation of a vessel who at the time sustain the relationship of master or principal to the person in immediate control of the vessel; where at the time of the tort the owner of the vessel is, with respect to the persons in control, merely a bailor, such persons, rather than the owner are liable."

A similar statement of principle is to be found in 70 Am.Jur.2d, Shipping, § 276. The Court will also observe that while Strom v. Anderson, supra, is no help to Emmett Henderson, it is clearly applicable to Basil Henderson.

In undertaking to hold Basil Henderson liable, counsel for plaintiff cites Coryell v. Phipps, 1943, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363, and Just v. Chambers, 1941, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903. The Court considers that both of those cases are distinguishable from this one as far as liability of the owner of the boat is concerned.

From the foregoing it follows that plaintiff is entitled to recover against Doris Collins and Emmett Henderson.

At the time of the accident plaintiff was about twenty-five years of age and had a life expectancy of forty-four years. She has a high school education. Prior to joining the Army in 1966 she had been employed by a credit bureau in Chicago, Illinois. She was discharged from the Army in 1969. After her discharge she and her then husband moved to Florida where she held a number of jobs. After she and her husband were divorced, she came to Arkansas where she has relatives. She enrolled in a school for beauty operators and was nearing the end of her course of instruction when she was injured. The evidence indicates that she was making satisfactory progress in her training.

As has been said, plaintiff sustained a compound comminuted fracture of the right femur accompanied by a very substantial loss of tissue above her right knee, which tissue cannot be restored. Her injury is permanent, and she has a substantial permanent disability arising from the fact that she suffers difficulty in standing or in walking on rough or uneven surfaces. She has sustained a great deal of pain and mental anguish, and will continue to suffer at least a good deal of discomfort as a result of her injuries. In addition, her leg has been disfigured and will remain so. That disfigurement will, in all probability, deter her from engaging in certain types of recreational activities and from wearing clothing of certain types. It will also doubtless affect her emotionally. Her medical and hospital expenses down to this time amount to nearly $7,000, and she will pay or incur such expenses in the future in the amount of about $2,000.

Plaintiff has lost earnings which she would have received had she been able to

work as a beautician upon completing her course of training or in some other line of work had she failed to complete the course or had she decided to follow some other line of endeavor. Her capacity to earn money in the future has been substantially diminished due to the fact that she cannot do any work which requires her to stand on her feet; that disqualifies her from being a beauty operator, and it ·may be assumed that it would disqualify her from re-enlisting in the Army, where, in view of her experience, she might be expected to derive substantial earnings and substantial fringe benefits. On the other hand, the Court does not consider that plaintiff is totally disabled or totally unemployable. Assuming that she had not been injured, and ignoring the fact of her re-marriage, the Court thinks that plaintiff might reasonably be expected to have worked about thirty years.

Taking into consideration all of the elements of damage that have been mentioned, the Court finds that the gross sum of $112,000 would be fair and reasonable compensation for plaintiff's injuries and damages, past, present and future. That sum must be diminished, of course, in proportion to plaintiff's own negligence, and the Court now finds that the plaintiff's negligence contributed to her injuries to the extent of twenty-five per cent (25%). Thus, her net award of compensatory damages will be $84,000. No case for punitive damages has been made, and no such damages will be awarded.

There remain to be considered the cross claims against Emmett Henderson. The Court's exoneration from liability of Basil Henderson and Bill Hobson renders their cross claims moot. Emmett Henderson filed no cross claim against Doris Collins, and the Court is of the opinion that she is not entitled to any indemnity or contribution from him. Certainly, she cannot complain because Emmett Henderson granted her own request to operate the boat, and his negligence in permitting plaintiff to ride elsewhere than in the rear seat of the boat was passive, whereas the negligence of Mrs. Collins was active.

A judgment in accordance with the foregoing will be entered.