Joyce ST. HILAIRE MOYE,
Appellee,

v.

Emmett HENDERSON and Doris
Collins, Appellants.

No. 73–1871.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1974.

Decided May 8, 1974.

George Pike, Jr., Little Rock, Ark., for appellants.

Henry Woods, Little Rock, Ark., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and ROSS, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

This is an action in admiralty brought by Joyce St. Hilaire Moye against Emmett Henderson, Basil Henderson, Doris Collins, and Bill Hobson seeking damages arising out of a boating accident which took place on the Arkansas River, a navigable stream, on June 6, 1971. The plaintiff suffered serious and permanent injuries, for which she seeks compensation and punitive damages. Jurisdiction is based on 28 U.S.C. § 1333(1). A pre-trial motion to dismiss based on lack of admiralty jurisdiction was overruled. After trial to the court, Judge Henley presiding, and pursuant to a Memorandum Opinion reported at 364 F.Supp. 1286 (E.D.Ark.1973), the plaintiff was awarded a judgment of $84,000 against Emmett Henderson and Doris Collins. Those defendants appeal from that judgment.

## FACTS

Shortly before the accident here involved, Basil Henderson purchased an

eighteen-foot motorboat powered by a 225 horsepower inboard engine. On June 6, 1971, he loaned the boat to his son, Emmett Henderson, for a pleasure outing on the Arkansas River. In the early afternoon the boating party met at a launching ramp near North Little Rock. Included were Emmett Henderson, Pat Henderson, Bill Hobson, Doris Collins, Carolyn McRae, and the plaintiff. The party cruised on the river for some time, with some intoxicants being consumed. Henderson allowed Hobson to operate the craft for a period, during which Doris Collins asked Hobson to be allowed to drive. She falsely represented to Hobson her experience in operating boats of this size and type. Mrs. Collins was feeling the effects of the intoxicants, and Carolyn McRae objected to allowing her to take the controls of the boat. Nevertheless, Hobson allowed her to drive after first securing the consent of Henderson, the master of the boat.

In the meantime, the plaintiff and Pat Henderson had assumed a perch atop the rear deck of the boat, with their feet on the rear seat. The plaintiff was holding a glass of wine. While the boat was traveling about 25 miles per hour, Pat Henderson shouted to Mrs. Collins three times, the last rather forcefully, to stop the boat so that someone could water ski. Mrs. Collins then pulled the combination gearshift-throttle lever backward through the neutral position into reverse gear. The boat stopped suddenly and tilted violently, throwing Henderson and the plaintiff into the water. The plaintiff was struck in the leg by the propeller, receiving serious and permanent injuries.[1]

## PROCEEDINGS BELOW

Suit was filed in federal court under its admiralty jurisdiction, the Arkansas River being a navigable stream. Named as defendants were Emmett Henderson, Basil Henderson, Bill Hobson, and Doris Collins. All of the defendants joined in a motion to dismiss the complaint on the ground that the court was without jurisdiction because admiralty did not extend to accidents involving small pleasure craft engaged in non-commercial navigation. The motion was overruled, Judge Henley holding in an unreported opinion that the case was clearly within the court's admiralty jurisdiction because the accident happened on navigable waters and "directly resulted from the operation of a boat which is certainly a traditional maritime activity." Judge Henley felt that admiralty applied regardless of the size of craft or the type of activity in which the boat was being operated.

After trial, Judge Henley found that Basil Henderson and Bill Hobson were free of negligence and absolved them of liability. 364 F.Supp. at 1291–1292. Such determination is not challenged on this appeal. However, he found that Doris Collins and Emmett Henderson were each guilty of negligence proximately causing the plaintiff's injuries. *Id.* The court determined that $112,000 would be fair and reasonable compensation for the plaintiff's injuries, but reduced this amount by 25% because of her own negligence in sitting on the rear deck instead of the seat. *Id.* at 1292, 1296. Judgment was thus entered against Emmett Henderson and Doris Collins for $84,000.

Those defendants appeal from that judgment, urging as grounds for reversal that the trial court erred in the following respects:

1. In holding that admiralty jurisdiction was established.

2. In determining that federal law controlled and refusing to apply and enforce the law of Arkansas.

3. In failing to hold that the plaintiff's negligence was the sole proximate cause of her injuries.

[1]. A more complete and detailed statement of facts may be found in Judge Henley's opinion, 364 F.Supp. at 1289–1291.

We reject such contentions and affirm the judgment for the reasons hereinafter stated.

## ADMIRALTY JURISDICTION

The judicial power of the United States extends "to all Cases of admiralty and maritime Jurisdiction; . . . " U.S.Constitution, Art. III, § 2. Congress has conferred original jurisdiction on the district courts of "[a]ny civil case of admiralty or maritime jurisdiction, . . . " through 28 U.S.C. § 1333(1). Whether the district court had jurisdiction over this case depends on whether the law of admiralty extends to the operation of small pleasure craft engaged in non-commercial navigation on navigable waters. The defendants contend on appeal that the admiralty jurisdiction of the federal courts does not extend this far. Thus, they reason, Judge Henley erred in holding that admiralty jurisdiction was present in this case, and the federal court was without jurisdiction, there being no diversity of citizenship among the parties.

The federal courts for many years exercised admiralty jurisdiction over torts governed only by the standard that the tort must have occurred on navigable waters. This standard was set down in The Plymouth, 70 U.S. (3 Wall.) 20, 36, 18 L.Ed. 125 (1865): "The jurisdiction of the admiralty does not depend upon the fact that the injury was inflicted by the vessel, but upon the locality—the high seas, or navigable waters where it occurred. Every species of tort, however occurring and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." This "locality test" was often reiterated by the federal courts. See, e. g., Victory Carriers, Inc. v. Law, 404 U. S. 202, 205, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971) (note list of cases in n. 2); Grant Smith-Porter Co. v. Rohde, 257 U.S. 469, 476, 42 S.Ct. 157, 66 L.Ed. 321 (1922); Weinstein v. Eastern Airlines, Inc., 316 F.2d 758, 761 (3d Cir. 1963). See also 7A J. Moore, Federal Practice, ¶.325[3] (1972).

However, over the years a number of courts questioned whether the maritime locality of a tort is alone sufficient to invoke the admiralty jurisdiction of the federal courts. Several lower courts had by 1972 held that a tort, in addition to having a maritime locality, must involve a significant relationship to maritime navigation and commerce in order to invoke admiralty jurisdiction. See Peytavin v. Government Employees Ins. Co., 453 F.2d 1121, 1127 (5th Cir. 1972); Chapman v. City of Grosse Point Farms, 385 F.2d 962, 966 (6th Cir. 1967); Smith v. Guerrant, 290 F.Supp. 111, 114–115 (S.D.Tex.1968); McGuire v. City of New York, 192 F.Supp. 866, 868 (S.D.N.Y.1961). Finally, in Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court was squarely faced with this question. In that case the plaintiff's airplane lost its power while taking off from the defendant's airport after ingesting seagulls into its engines, and crashed into Lake Erie, a navigable body of water. After discussing the history of the locality test, Justice Stewart summarized as follows:

> [T]here has existed over the years a judicial, legislative, and scholarly recognition that, in determining whether there is admiralty jurisdiction over a particular tort or class of torts, reliance on the relationship of the wrong to traditional maritime activity is often more sensible and more consonant with the purposes of maritime law than is a purely mechanical application of the locality test. *Id.* at 261.

Finding that a crash of land-based aircraft while operating between two points of land had little to do with the focus or purpose of the law of admiralty, the Court held that maritime locality alone is no longer sufficient to sustain admiralty jurisdiction in aviation accidents. Rather, the wrong must "bear a significant relationship to traditional maritime activity." *Id.* at 268. Such a maritime nexus is not present in the

crash into navigable waters of a land-based aircraft operating between two points in the continental United States. *Id.* at 274.

The strict locality test for admiralty has thus been extensively altered. An accident must now involve a traditional maritime activity to sustain admiralty jurisdiction. Thus, the question of whether admiralty jurisdiction existed in the instant case depends on whether the accident arose out of "traditional maritime activity."

The defendants rely on *Executive Jet* to support their contention that this case does not fall within the admiralty jurisdiction of the federal courts, even though the accident occurred on navigable waters. They contend that the operation of small pleasure craft engaged in non-commercial navigation does not constitute a "traditional maritime activity." Rather, they would limit that term to commercial endeavors. In addition, they rely on policy grounds for leaving disputes of this type to state courts, which are competent to handle these essentially local cases, thus freeing the federal courts from the burden of trying such cases.

Several cases have interpreted *Executive Jet* and its effect on the admiralty jurisdiction of the federal courts. In Crosson v. Vance, 484 F.2d 840 (4th Cir. 1973), a water skier brought suit against the operator of the towing motor boat for injuries suffered when he ran into shoal waters on a navigable tributary of Chesapeake Bay. Judge Haynsworth explained the historical basis of admiralty jurisdiction.

> The admiralty jurisdiction in England and in this country was born of a felt need to protect the domestic shipping industry in its competition with foreign shipping, and to provide a uniform body of law for the governance of domestic and foreign shipping, engaged in the movement of commercial vessels from state to state and to and from foreign states. The operation of small pleasure craft on inland waters which happen to be navigable has no more apparent relation to that kind of concern than the operation of the same kind of craft on artificial inland lakes which are not navigable waters.

> \*   \*   \*   \*   \*   \*

> [W]e can perceive no apparent federal interest in providing a forum or a uniform body of law for the adjudication of claims growing solely out of the operation of pleasure craft. *Id.* at 840, 841.

He then concluded that *Executive Jet* had negated the exercise of admiralty jurisdiction in cases involving water skiers, because the Court had cited a case involving a water skier as an example of a case involving no connection with traditional maritime activity. *See* 409 U.S. at 255–256 & n. 5. However, Judge Haynsworth did not go so far as to hold that admiralty would never extend to non-commercial enterprises. "[W]e need not speculate whether the Supreme Court's opinion in *Executive Jet Aviation* would foreclose resort to admiralty in any case involving the operation of small pleasure craft, . . . ." *Id.* at 842.

In Adams v. Montana Power Co., 354 F.Supp. 1111 (D.Mont.1973), admiralty law was held not to apply to the activities of boaters, water skiers, and fishermen on the Missouri River. However, at that point, the river had been dammed, forming a non-navigable lake upon which there was no "traditional maritime activity," which that court defined as relating to the needs of commerce. *Id.* at 1112. In Rubin v. Power Authority, 356 F.Supp. 1169 (W.D.N.Y. 1973), divers were drowned in the water intakes of the defendant. Admiralty was held not to apply, on the ground that the failure of the defendant to post warning signs did not involve the requisite maritime nexus to justify admiralty jurisdiction. *Id.* at 1171. However, the court there distinguished cases involving the operation of vessels. *Id.* n. 1.

Other cases interpreting *Executive Jet* have limited its holding to narrower grounds. In Maryland v. Amerada Hess Corp., 356 F.Supp. 975, 976–977 (D.Md. 1973), the court stated that the Supreme Court had not rejected the locality test in all admiralty cases, but only for claims arising out of airplane accidents, which are "perverse" or "casuistic border line situation[s]." A close reading of the *Executive Jet* decision would support an interpretation limiting its holding to situations involving aircraft. Justice Stewart extensively discussed the differences between aircraft and waterborne vessels, 409 U.S. at 261–272, and that difference was the essential basis for the Court's holding. Justice Stewart explicitly limited the rejection of the locality test to aviation tort cases. *Id.* at 274.[2]

Other cases interpreting *Executive Jet* have held that admiralty certainly extends to the operation of waterborne vessels as a traditional maritime activity. In Oppen v. Aetna Ins. Co., 485 F. 2d 252 (9th Cir. 1973), owners of private pleasure boats sustained damage from an oil spill in the Santa Barbara Channel. The Ninth Circuit held that damages for physical injury to maritime vessels and interference with their right of navigation presented a significant relationship to traditional maritime activity so as to sustain admiralty jurisdiction. *Id.* at 257. In Luna v. Star of India, 356 F.Supp. 59 (S.D.Cal.1973), the involvement of a vessel was considered alone sufficient to invoke admiralty jurisdiction. An accident occurring on an historical merchant vessel used as a dockside museum was held to present a sufficient nexus to traditional maritime activity. *Id.* at 66.

More support for holding that the operation of vessels, including pleasure craft, comes within admiralty jurisdiction is the fact that the Supreme Court itself has previously assumed the existence of admiralty jurisdiction in a number of cases involving the operation of pleasure craft, though it did not discuss the problem directly. Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943); Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941). See *Crosson, supra,* at 842; *cf.* Petition of Porter, 272 F.Supp. 282, 284 (S.D.Tex. 1967). The holding in *Executive Jet,* limited on its face to aviation accidents, did not overrule these cases.

Perhaps the most persuasive case interpreting *Executive Jet* is Kelly v. Smith, 485 F.2d 520 (5th Cir. 1973). The plaintiffs there sustained personal injuries aboard their small outboard boat when fired upon by the defendants from shore. While the fact that the injury was received on navigable waters in a boat was considered significant, the Fifth Circuit indicated other factors must be considered to determine if a substantial maritime relationship existed. These factors included "the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and type of injury; and traditional concepts of the role of admiralty law." *Id.* at 525. The court found a sufficient maritime nexus

2. Justice Stewart even limited the holding to "flights by land-based aircraft between points within the continental United States." 409 U.S. at 274. He specifically rejected the notion that the Court was holding that an aviation tort could *never* bear a sufficient relationship to traditional maritime activity to come within admiralty. He recognized that an aircraft flying over international waters between foreign countries would be performing a function previously performed by waterborne vessels. *Id.* at 271; *see id.* at 264. Following that reasoning, a helicopter which crashed into the Gulf of Mexico while performing the functions of a crewboat was held to present a sufficient nexus to traditional maritime activity to justify the exercise of admiralty jurisdiction. Higgenbotham v. Mobil Oil Corp., 357 F.Supp. 1164, 1167 (W.D.La.1973). In accord was Hark v. Antilles Airboats, Inc., 355 F.Supp. 683, 687 (D.V.I.1973), where the court held admiralty jurisdiction extended to accidents arising from flights by seaplanes over international waters.

in the firing at a vessel on a major commercial stream. "Admiralty has traditionally been concerned with furnishing remedies for those injured while traveling navigable waters." *Id.* at 526. In addition, the federal interest in protecting maritime commerce and navigation on navigable waters was considered to be compelling toward admiralty jurisdiction. *Id.*

■ Such reasoning is quite persuasive and should be accepted to sustain the exercise of admiralty jurisdiction in the instant case. The use of a waterborne vessel on navigable waters presents a case falling appropriately within the historical scope and design of the law of admiralty. "That law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters." *Executive Jet, supra,* at 270. Even more compelling is the federal interest in protecting navigation and commerce on navigable waters. The navigation of waterborne vessels on those waters, even if not directly engaged in commerce themselves presents a potential danger to the operation of vessels which are engaged in commerce on those waters. This is the very basis of laws requiring vessels used on navigable waters to meet certain safety and operational standards. *See, e. g.,* Motorboat Act of 1940, 46 U.S.C. § 526 (as amended, 1958). The law of admiralty must surely cover the operation of vessels which present potential dangers to commerce on navigable waters.

■ Nor may it be contended that the term "vessel" in admiralty law is limited to ships or vessels engaged in commerce. In 1 U.S.C. § 3 the term is defined as follows: "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 46 U.S.C. § 713 provides in part: "[T]he term 'vessel' shall be understood to comprehend every description of vessel navigating on any sea or channel, lake or river. . . ." These definitions are surely broad enough to encompass the type of boat here involved.

■ In addition to the holding that the law of admiralty extends to the operation of all waterborne vessels on navigable waters, admiralty jurisdiction may be applicable under express statutory provision. The Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 740, provides in part: "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." The purpose of this legislation was to extend the law of admiralty to encompass claims arising out of a relationship to maritime activities, regardless of the locality of the tort. *Executive Jet, supra,* at 260. However, the language of the statute is written in the broadest terms to cover all damage "caused by a vessel on navigable water." All that is required for the Act to come into involvement is injury caused by a vessel on navigable waters. *See* Gebhard v. S.S. Hawaiian Legislator, 425 F.2d 1303, 1307 (9th Cir. 1970). As mentioned previously, statutory definitions of vessel do not limit the term to commercial boats, but cover any waterborne transportation device.

■ We affirm Judge Henley's holding that the operation of a boat on navigable waters, no matter what its size or activity, is a traditional maritime activity to which the admiralty jurisdiction of the federal courts may extend. The Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 740, provides an additional basis for the exercise of admiralty jurisdiction in this case.

## APPLICABLE LAW

The defendants' second contention on appeal is that even if the district court

properly exercised admiralty jurisdiction in this case, it should have applied and enforced Arkansas law. That state has enacted a boat guest statute. Ark.Stat. Ann. § 21–235 (1968). This legislation, patterned after automobile guest statutes, forbids a social guest on a motorboat from recovering damages against the owner or operator of the boat unless it was "wilfully and wantonly operated in disregard of the rights of others." *Id.* Application of this statute would have barred any recovery by the plaintiff, for Judge Henley found that neither Doris Collins nor Emmett Henderson were guilty of wilful or wanton operation of the vessel without regard to the rights of others. 364 F.Supp. at 1293.

■■■ A federal court sitting in admiralty does not sit as a diversity court; therefore, this is not a case "where state substantive law *must* be ascertained and applied." Spiller v. Lowe, 466 F.2d 903, 907 & 908 n. 6 (8th Cir. 1972). Rather, admiralty suits are governed by federal substantive and procedural law. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Branch v. Schumann, 445 F.2d 175, 178 (5th Cir. 1971). However, a federal court sitting in admiralty need not "invariably refuse to recognize and enforce a liability which the State has established in dealing with a maritime subject. On the contrary, there are numerous instances in which the general maritime law has been modified or supplemented by state action . . . ." Just v. Chambers, 312 U.S. 383, 387–388, 61 S.Ct. 687, 691, 85 L.Ed. 903 (1941). *See* Southern Pacific Co. v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). Thus, admiralty courts may apply state law by express or implied reference or when the federal law of admiralty is incomplete. Baggett v. Richardson, 473 F.2d 863, 864 (5th Cir. 1973). *See* The Tungus v. Skovgaard, 358 U.S. 588, 594, 79 S.Ct.

503, 3 L.Ed.2d 524 (1959). The Supreme Court has sustained the application of state laws which broaden the scope of liability beyond the general maritime standard. *See* Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960); *Just, supra. See also* In re M/T Alva Cape, 405 F.2d 962, 969–970 (2d Cir. 1969).

■■■ However, state law may not be applied by a federal court if it would defeat or narrow any substantial admiralty rights of recovery, either as created by federal legislation or as defined by interpretive decisions of the federal courts. *Pope & Talbot, supra* at 410; Garrett v. Moore-McCormack Co., 317 U.S. 239, 243–246, 63 S.Ct. 246, 87 L.Ed. 239 (1942); Bagrowski v. American Export Isbrandtsen Lines, Inc., 440 F.2d 502, 506 (7th Cir. 1971); *Alva Cape, supra,* at 970. In addition, state law may not be applied to "contravene an act of Congress, to prejudice the characteristic features of the maritime law or to disrupt the harmony it strives to bring to international and interstate relations." J. Ray McDermott & Co., Inc. v. Vessel Morning Star, 457 F.2d 815, 818 (5th Cir.) (en banc), cert. denied, 409 U.S. 948, 93 S.Ct. 271, 292, 34 L.Ed.2d 218 (1972). *See Just, supra,* at 389–390; *Jensen, supra,* at 216. Even if state law does not contravene an established principle of admiralty, it may be deemed pre-empted if it is in direct contravention of the uniformity of the admiralty law in some crucial respect. *Alva Cape, supra,* at 970. *See Branch, supra,* at 178.

■■■ Application of the Arkansas statute herein involved would not be in accordance with these principles. The standards of maritime law measure the rights and liabilities arising from conduct occurring on vessels on navigable waters. *Kermarec, supra,* at 628. A tort action against the master of a vessel therefore is an action lying in federal maritime law, and negligence in the operation of a boat creates a federal

right of recovery to all who are injured by that negligence. *See Pope & Talbot, supra,* at 409; Blevens v. Sfetku, 259 Cal.App.2d 527, 66 Cal.Rptr. 486, 491 (1968). The Arkansas statute limiting recovery for social guests on boats would defeat that federal right of recovery, and thus may not be applied in an admiralty court. In addition, Arkansas is the only state with a boat guest statute currently in force.[3] Application of this local rule would be disruptive of the uniformity of the admiralty law, for only within the state of Arkansas would such a rule be operative to defeat the rights of persons injured by the negligence of boat operators on navigable waters. Such a local variation is not warranted in light of the need for a uniform and harmonious maritime law.

In addition, the Arkansas statute may well be in direct contravention of a preemptive federal statute. The Motorboat Act of 1940, 46 U.S.C. § 526, provided for the federal regulation of all motorized vessels used on navigable waters. Section 526*l*, as amended in 1958,[4] provided in pertinent part,

> No person shall operate any motorboat or any vessel in a reckless or negligent manner so as to endanger the life, limb, or property of any person. To "operate" means to navigate or otherwise use a motorboat or vessel.

A violation of this standard of conduct was a misdemeanor punishable by a fine of up to $2000 and/or imprisonment for one year under § 526m of the Act.[5]

Judge Henley held that the legislation providing penalties for the negligent operation of motorboats did not purport to "deal with private remedies for injuries arising out of motor boat accidents occurring on navigable waters. . . . ." 364 F.Supp. at 1294. According to this reasoning, state civil remedies would not be in direct conflict with the above federal standard of care so as to be specifically pre-empted. Support for this holding may be found in Godinez v. Jones, 179 F.Supp. 135, 139 (D.P.R.1959).

However, we do not accept that conclusion. The federal act established a standard of conduct in 46 U.S.C. § 526*l* prohibiting negligence or carelessness in the operation of a boat, and the state statute in question prevented the application of that standard in civil actions. The state statute thus conflicts with the federal standard and must necessarily fall. The Court of Appeal for California, interpreting a similar statute in that state, considered the state statute to conflict with the federal standard of conduct, and held that the latter must therefore pre-empt the former. *See Blevens, supra,* at 491. In addition, Judge Henley held that though the statutes did not conflict directly, the Arkansas statute undermined the uniformity of the federal maritime law and refused to apply and enforce it in the instant case. 364 F.Supp. at 1294. That result is in accordance with our own conclusion that application of the Arkansas statute

---

3. California also had a boat guest statute. However, the Court of Appeal of that state refused to apply it to defeat a federal right of recovery for negligent injury by a boat operator while in navigable waters. See Blevens v. Sfetku, 259 Cal.App.2d 527, 66 Cal.Rptr. 486, 491 (1968). That statute and all other guest statutes in California have been declared unconstitutional as a violation of equal protection under the 14th amendment, and thus are no longer operative.

Brown v. Merlo, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973).

4. This section, among others, was repealed effective August 10, 1971. Act of August 10, 1971, Pub.L.No. 92–75, § 41(a)(1), 85 Stat. 228. However, it was in effect at the time of the accident here involved.

5. Repealed, Act of August 10, 1971, Pub.L. No. 92–75, § 41(a)(1) 85 Stat. 228.

would be disruptive of the uniformity of the admiralty law.

Federal legislation in force at the time of the accident may therefore be considered to have pre-empted the field, and the contradictory state statute could not have been enforced by the admiralty court. In addition, the state statute was destructive of the uniformity of federal maritime law, and therefore could not be enforced by the admiralty court even if the two acts were not directly contradictory. The district court did not err in refusing to enforce the Arkansas boat guest statute.

## APPORTIONMENT OF NEGLIGENCE

The defendants' third contention on appeal is that the district court erred in failing to hold that the sole proximate cause of the plaintiff's injury was her own negligence in sitting atop the rear deck of the boat rather than in the seat. It is the responsibility of the trial judge as factfinder to assess the facts and apportion negligence among the parties as he deems proper under the doctrine of comparative negligence, which is applied in admiralty, See Pope & Talbot, supra, at 408–409; American President Lines, Ltd. v. Welch, 377 F.2d 501, 504 (9th Cir.), cert. denied, 389 U.S. 940, 88 S.Ct. 294, 19 L.Ed.2d 290 (1967). Judge Henley apportioned 25% of the total negligence to the plaintiff and reduced her judgment accordingly. Such a finding may be reversed in an appellate court only if it is clearly erroneous. Fed.R.Civ.P. 52(a); Guzman v. Pichirilo, 369 U.S. 698, 702, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962); McAllister v. United States, 348 U.S. 19, 20–21, 75 S.Ct. 6, 99 L.Ed. 20 (1954). The evidence presented in this case amply supports Judge Henley's apportionment, and that finding should not be set aside on appeal.

The judgment is affirmed.